**NELSON, Appellant,**

v.

**NELSON, Appellee.**

[Cite as *Nelson v. Nelson* (1990), 65 Ohio App.3d 800.]

Court of Appeals of Ohio,
Lake County.

No. 88-L-13-199.

Decided Jan. 2, 1990.

*Jean Ann S. Sieler,* for appellant.

*Bartley J. Troy,* for appellee.

Ford, Judge.

Appellant, Dale E. Nelson, and appellee, Pamela Kay Nelson, were divorced on April 18, 1975. Two minor children, Jeffrey and Natalie, were born to the parties on June 1, 1966 and March 2, 1973, respectively. Pursuant to the divorce decree, custody was granted to appellee, and appellant was ordered to pay child support in the amount of $25 per week per child. Appellant was granted visitation rights, but visitation with Natalie was not to begin until she reached the age of five.

In 1975, appellee initiated an URESA action to enforce the child support order through the Broward County Court in Florida where appellant was residing.

Appellee remarried on September 17, 1976, and in 1978, she contacted appellant regarding the stepparent adoption of Natalie. Appellant testified that he felt the adoption would be in the best interest of the child, so he consented. He also indicated that, pursuant to the agreement, he would be forgoing his paternal rights and would be released from his obligation to support Natalie.

Appellee, on June 16, 1978, wrote a letter to the Broward County Court indicating:

"I am requesting Broward County Court suspend child support and all visitation privileges of Dale E. Nelson [appellant] * * * for Natalie Beth Nelson. My husband Judson J. Pacek and I plan to initiate adoption proceedings for Natalie in the near future, therefore, we are in full agreement with Dale E. Nelson with whom we have discussed both the suspension of child support and the adoption, that these be suspended until such time as my husband and I file for said adoption. Would the court please advise Lake County Court of this request for suspension of child support and visitation for Natalie, and agreement of such with [appellant] and myself."

She again corresponded with the Broward County Court division on June 20, 1978 and noted that her present husband was planning to adopt Natalie, that Natalie was well taken care of, and that she agreed to eliminate support for her. Apparently, the Broward County Court modified the order and reduced the support obligation to $25 per week.

On March 26, 1983, appellee again wrote to the Broward County authorities. She indicated that she had "no argument or complaint" with appellant's child support payments.

The parties' son, Jeffrey, was killed in an automobile accident on October 6, 1983. At the funeral, appellant saw his daughter and spoke with her for a few hours. She visited him at Christmas, and appellant began voluntarily

paying $50 per month to the appellee for Natalie's care. This continued until the appellee, complaining of harassment by the appellant, sent a letter to the appellant requesting that he desist communicating with Natalie. He then ceased sending checks in September 1984. The appellee also testified that, while she had consented to these minimal contacts, she had no intention of letting this become regularly scheduled visitation.

Apparently, sometime prior to September 1985, appellant learned Natalie had not been adopted. At that time he was contacted by the Lake County Welfare Department which indicated appellee was seeking ADC. Appellant responded that he had no legal obligation to support Natalie during 1984 but had done so voluntarily, and that he was going to initiate custody proceedings.

On October 17, 1986, appellee filed a motion for a lump sum judgment on child support arrearages and for an increase in child support. A hearing was held on February 2 and May 14, 1987. The referee made findings of fact and recommendations which were filed on June 16, 1987. The referee ordered appellant to pay $103 per week for child support for Natalie. Child support payments were suspended from June 16, 1978 through September 30, 1983, which was the date the referee determined appellee had contacted appellant requesting financial assistance. The referee then granted a lump sum award to appellee for arrearages. (The final award was to be predicated upon CSEA audit.)

On July 30, 1987, appellant filed an objection to the referee's report. The judge, on August 10, 1987, ordered that the matter be heard without oral argument. Both parties submitted statements with the court. Appellant filed an objection and, on December 31, 1987, the court directed appellant to contact the bureau of support to schedule "a mistake of fact hearing."

Appellant then, on January 20, 1988, filed a brief indicating his objection focused upon the referee's report and the bureau's application of that recommendation.

On September 10, 1988, the judge adopted *in toto* the referee's report.

Appellant appealed raising the following assignments of error:

"1. The trial court erred to the prejudice of plaintiff-appellant in failing to give full effect to the agreement of the parties modifying the divorce decree.

"2. The trial court erred to the prejudice of plaintiff-appellant in failing to recognize appellee's forgiveness of the child support arrearage.

"3. The trial court erred to the prejudice of plaintiff-appellant in failing to recognize the defense of laches.

"4. The trial court erred to the prejudice of plaintiff-appellant in adopting the referee's findings of fact and recommendations as to a future child support."

In the first three assignments of error, appellant offers three different theories in an attempt to negate his child support obligations. All of these shall be addressed in a consolidated fashion.

In Ohio, both statutory law and common law, as well as public policy, recognize:

"The natural duty of the parents to provide their children with suitable shelter, food, and clothing until they are able to support themselves * * *.

" * * * *

"A father's obligation to support his children is considered to be a duty owed to the state as well as to his minor children, since, if the father fails to fulfill his obligation there is a distinct possibility that the state will have to assume that obligation and that the children will be supported at public expense." 47 Ohio Jurisprudence 3d (1983) 67–69, Family Law, Section 608.

 Therefore, the parental obligation is one which transcends some of the common tenets of traditional law. See *State v. Ducey* (1970), 25 Ohio App.2d 50, 54 O.O.2d 80, 266 N.E.2d 233; R.C. 2111.08. Furthermore, it would be unreasonable in all circumstances to permit the parents, either individually or jointly, to absolve themselves of this duty of support by entering into an agreement between themselves to that effect subsequent to a court order. However, the father can "relieve himself from *liability* to the mother for support of their minor children" by agreement. (Emphasis added.) 47 Ohio Jurisprudence 3d (1983) 75, Family Law, Section 614.

 This, in essence, allows the parents to enter into an agreement which would, at best, have retroactive application for the past support. In other words, the mother can "forgive" the father for the past arrearages by agreement, but she cannot summarily dispense with his future obligations in the same manner.

 While this court is aware that our sister courts permit absolution of the father's "natural duty of support" by way of agreement and/or the doctrine of laches (*Tressler v. Tressler* [1972], 32 Ohio App.2d 79, 61 O.O.2d 85, 288 N.E.2d 339; *Beiter v. Beiter* [1970], 24 Ohio App.2d 149, 53 O.O.2d 361, 265 N.E.2d 324; *Cottrell v. Cottrell* [Nov. 22, 1985], Lucas App. No. L–85–139, unreported, 1985 WL 8226), we do not fully endorse the rationale expressed there. To the contrary, this court adopts the more traditional philosophy that court-ordered support is for the benefit of the children rather than the custodial parent and, consequently, cannot be waived by the parents.

*Rhoades v. Rhoades* (1974), 40 Ohio App.2d 559, 69 O.O.2d 488, 321 N.E.2d 242; *Smith v. Smith* (1964), 7 Ohio App.2d 4, 36 O.O.2d 27, 218 N.E.2d 473.

This position is consistent with the new attitudinal and statutory changes that have recently surfaced regarding child support. The new laws are simply codifications of the philosophy of enforcing the court-ordered support. R.C. 2919.21. These enactments have provided the judiciary with a greater range of sanctions for noncompliance and an expeditious means of collecting support payments.

Furthermore, this court is hard pressed to uncover case law which permits the parents to enter into an agreement which effectively modifies a court order, made by the court after determining, pursuant to statutory guidelines, what is in the best interest of the children. Generally speaking, in this court's view, any subsequent adjustment in support, such as an alteration, modification or curtailment, should only be "legally effective" when undertaken by a similar court action.

However, this court is cognizant that, in certain situations, equitable principles and equitable defenses, when established by a proper evidential predicate, may be applicable, which would permit the parents to enter into an extrajudicial agreement that may have retroactive application regarding child support.

In this cause, there appears to be such an agreement established by an evidential table which supports an equitable resolution. Appellee, by her affirmative actions, which included contacting her former husband regarding the stepparent adoption *and* writing to the Florida authorities on this same issue, initiated the formation of the oral agreement of which she now complains. Further, appellant relied upon this "release" and forbore visitation as a result of it. In essence, she effectively forgave appellant for the past support. Such "forgiveness" continued until she recanted it by instituting the formal legal proceedings on October 17, 1986.

This court concludes that the concept of forgiveness was applicable to the amount of child support due and owing, over and above the amounts voluntarily paid from September 30, 1983 through October 17, 1986. Under this approach, the appellant is not absolved from a significant portion of support responsibility, but, on the other hand, certain compelling equities in his favor are not ignored. Therefore, the second assignment is well taken to the extent of this forgiveness, and the first and third assignments are thus overruled.

In the fourth assignment, appellant alleges that the court erred with respect to future support. As noted, while recognizing that a formalized adoption may absolve a parent of support, this court, absent a judicial

proceeding, will not permit a parent to wash his or her hands of the natural obligation to support the children. Such obligations are properly modifiable by a court and, absent a showing of an abuse of discretion, are enforceable.

In this cause, there is no such showing. This court therefore cannot reverse on this issue. *Rohrbach v. Rohrbach* (1988), 40 Ohio App.3d 92, 531 N.E.2d 773.

The fourth assignment is without merit.

For the foregoing reasons, the judgment of the trial court is modified to include forgiveness for the amount of child support due and owing over and above the amount voluntarily paid from September 30, 1983 through October 17, 1986 and is affirmed as modified.

*Judgment affirmed*
*as modified.*

CHRISTLEY, P.J., and JOSEPH E. MAHONEY, J., concur.