OPINION
{¶ 1} Plaintiff-appellant Jefferson County Child Support Enforcement Agency (CSEA) appeals the Jefferson County Juvenile Court's decision denying CSEA's motion seeking that defendant-appellee Joseph Horkulic Jr. pay child support to Cathy Abrams. The main issue asks whether and to what extent the residential parent can contract away the right to child support. For the following reasons, the decision of the trial court is reversed, and this case is remanded for determination of child support prospective from the date the motion was filed.
 STATEMENT OF THE CASE {¶ 2} In 1994, Joseph Horkulic Jr. filed an acknowledgment of paternity with regards to Cathy Abrams' two children, Joseph Horkulic III, born June 1982, and Jessica Horkulic, born November 1988. Joseph III was assigned Case No. 94PA263, and Jessica was assigned Case No. 94PA264. The paternity acknowledgment was accepted by the court in January 1995. Custody remained with Cathy, and child support was thereafter set.
 {¶ 3} On January 26, 1999, Joseph filed a motion to modify visitation and change custody or institute joint custody for the reason that Cathy was planning to move to Iowa with the two children. On March 2, 1999, the parties informed the court that they settled the issues; the court thus ordered the parties to reduce the agreement to writing for court approval as an entry. On March 10, 1999, the parties' signed agreement was entered as a court order. This agreement gave custody to Cathy, allocated vacations and transportation costs, and agreed that neither parent shall pay child support. The entry was stamped final and appealable and a copy was served on CSEA. No appeal was filed therefrom.
 {¶ 4} On May 28, 2002, CSEA filed a motion for child support and medical coverage for Jessica (not Joseph III as he was just turning 20) on Cathy's behalf at the request of Iowa. A uniform support petition completed by Cathy was attached. On July 26, 2002, a hearing proceeded before the magistrate; present were Joseph and a CSEA attorney. At the hearing, the magistrate voiced its legal opinion that although one could waive back support, one could not waive future support. However, the magistrate advised that it was going to deny support because the agreement was signed by a judge and never appealed. (Tr. 6, 8). On August 1, 2002, the magistrate denied CSEA's motion, stating that it would follow the March 10, 1999 agreed judgment entry which was never appealed.
 {¶ 5} On August 13, 2002, CSEA filed timely objections to the magistrate's decision. In these objections, CSEA argued that future child support cannot be waived by either party and that any agreement which relieves a parent of future support obligations is to be construed as unenforceable. CSEA cited numerous Supreme Court and appellate cases in support of its position. CSEA apparently accidentally attached a copy of the March 10, 1999 agreed entry which had been entered in Case No. 94PA263, Joseph III's case.
 {¶ 6} On September 27, 2002, the trial court overruled CSEA's objections, approved the magistrate's decision, and held that no child support would be ordered because the parties agreed that there would be no support in this case in the final court order of March 10, 1999. CSEA filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 7} CSEA's sole assignment of error provides:
 {¶ 8} "The court erred by allowing the biological parents of a child to enter into an agreement waiving any future or back child support for a child in violation of Ohio Revised Code § 3103.03 and by applying that agreement to a minor child in a separate case."
 {¶ 9} This assignment raises two issues. First, CSEA argues that the court was not permitted to use an agreed entry filed in Case No. 94PA263 to preclude child support for Jessica in Case No. 94PA264. Apparently, CSEA is presently confused by its own mistake below. As aforementioned in the facts, they mistakenly attached the entry in 94PA263 to their objections in this case, 94PA264. Obviously, the same entry was filed in both the cases for Joseph III and for Jessica. We have before us, as the magistrate and trial court had before them, Jessica's file in Case No. 94PA264. In this file is the original March 10, 1999 agreed order entered in Case No. 94PA264, Jessica's case. Accordingly, this argument is wholly misguided.
 {¶ 10} The second issue deals with whether Cathy could waive "future or back child support." We will first address the appellate contention concerning back support. It is important to note that CSEA's May 28, 2002 motion does not mention back support. More importantly, their objections to the magistrate's decision explicitly only argue thatfuture child support cannot be waived by either party. "Objections shall be specific and state with particularity the grounds of the objection. * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding of fact or conclusion of law under this rule." Juv.R. 53(E)(3)(b). We do not imply that this was an omission by CSEA at the time it filed objections. Rather, it appears to this court that the CSEA representative who wrote the objections realized the distinctions between future and retroactive child support reviewed infra. Because CSEA did not request back support and did not mention back support in its objections, we need not review the issue on appeal.
 {¶ 11} Even if we were to review the back support issue, CSEA's appellate argument is not persuasive. As mentioned by the magistrate and trial court, no appeal was taken from the agreed judgment entry setting forth that no child support shall be paid. Thus, the remaining remedy is a motion for child support. However, case law which we find pertinent to this case provides that such a motion can be granted only prospectively. In fact, many of the cases cited by CSEA support a conclusion that one who waives child support for consideration (especially where a court journalized the agreement) cannot seek to retroactively invalidate the agreement in order to collect support from a date prior to the motion to impose child support. Nokes v. Nokes (1976), 47 Ohio St.2d 4 (holding that the court can modify child support portions of separation agreement incorporated into a decree "as to future installments"); Nelson v.Nelson (1990), 65 Ohio App.3d 800, 805 (holding that forgiveness for past child support continued until wife recanted it by instituting formal legal proceedings). Accordingly, even if we were to review CSEA's appellate argument regarding back child support, we would not rule in favor of CSEA.
 {¶ 12} We now move to the preserved issue of whether a residential parent can seek future child support even though she previously waived the right to child support in an agreed judgment entry. Contrary to CSEA's suggestions, we do not review this issue under a manifest weight of the evidence or abuse of discretion standard. Rather, we review legal issues de novo (which actually works in CSEA's favor).
 {¶ 13} CSEA first cites R.C. 3103.03 for the law providing that a parent has a duty to support his/her minor children. They then cite a plethora of dated cases that touch upon the subject. However, we really only need to turn to one case to resolve this issue; that is, DePalmo v.DePalmo (1997), 78 Ohio St.3d 535. In that case, the child lived with the father, and the mother paid no support. The mother later tried to obtain custody. She lost, but the trial court filed an entry which explicitly incorporated the father's waiver of support from the mother. As in the case before us, no appeal was filed at that time. Thereafter, the father filed a motion for child support which was granted. The Supreme Court accepted jurisdiction to consider the proper test to be applied in determining whether modification or imposition of child support was proper.
 {¶ 14} The Supreme Court reviewed and rejected the Twelfth District's case of Anderkin v. Lansdell (1992), 80 Ohio App.3d 687. InAnderkin, a separation agreement was incorporated into a divorce decree stating that the husband was the custodial parent and the wife was not responsible for child support. Five years later, the husband filed a motion to modify child support. The Twelfth District noted that where a trial court is asked to modify an existing child support order, the court must follow the test in R.C. 3113.215(B)(4), the ten percent threshold test. Id. at 690. However, the court then held that where there is an agreement under which the custodial parent assumes sole responsibility for support, then there is no "child support order" and thus a dual threshold test applies whereby the court must determine if "the supporting custodial parent's circumstances changed to the extent that that parent can no longer provide the total amount reasonable for support"; or "the noncustodial parent's circumstances have changed substantially and the trial court in its discretion finds it is in the best interests of the children to receive support from that parent." Id. at 691.
 {¶ 15} However, the Supreme Court disagreed, noting that those who follow the Anderkin test "seem to focus solely on the issue of whether a child support order is already in existence. However, we agree with the referee and find that this is a distinction without a difference and is immaterial to whether child support should be calculated according to the statutory guidelines." DePalmo, 78 Ohio St.3d at 539. The Supreme Court held that where a custodial parent, whose prior agreement to waive child support was journalized as a court order, files a motion to modify or impose child support, the court must complete a child support worksheet.
 {¶ 16} The Court noted that it is undisputed that where a support order already exists, the court must conduct a review under R.C.3113.215(B)(4), which required the court to complete a worksheet and determine if the recalculated amount is more than or less than ten percent of the amount presently required to be paid. Id. at 539-540. If it is, then the change shall be considered by the court as a change of circumstance that is substantial enough to require modification of the amount of child support. Id. at 540. In such a situation, the court shall require support in the amount set forth in the guidelines unless that amount would be unjust or inappropriate and not in the best interests of the child. Id.
 {¶ 17} The Supreme Court concluded:
 {¶ 18} "The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support. * * *Obviously, when the amount of child support provided by the noncustodialparent is zero, but the Child Support Guidelines clearly establish thatthe noncustodial parent owes support, then that ten percent difference isclearly met. * * * Whether a court is establishing an initial childsupport order or whether the court is modifying an order based on anagreement between the parties that does not include an order for thepayment of child support, the court must apply the Child SupportGuidelines * * * When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4)." Id. at 540-541 (Emphasis added). See, also, R.C. 3119.79 (which contains provisions analogous to former R.C. 3113.215(B)(4), repealed in March 2000).
 {¶ 19} Appellate courts have thereafter conformed similar cases to the DePalmo holding. Cook v. Cook (2001), 143 Ohio App.3d 687, 691 (9th Dist.); Dickens v. Joseph (May 30, 2000), 10th Dist. No. 99AP-688. For instance, the Twelfth District has recently had the opportunity to alter its position and align its case law to that of the Supreme Court. Dicksonv. Dickson (May 6, 2002), 12th Dist. No. CA2001-11-094. In that case, the parties agreed to change custody in return for an agreement that the noncustodian pay no support. Subsequently, the custodian filed a motion for modification of child support. The court cited DePalmo and held that even though there was a non-support agreement and even though there was no existing child support order, the trial court was required to complete a worksheet to determine the rebuttable child support obligation which could be deviated from if found to be unjust or inappropriate and not in the children's best interest under R.C. 3119.23, 3119.24, and 3119.79.
 {¶ 20} The Supreme Court has established that when a modification motion is filed (even in a case where the potential obligee has waived support in an agreed entry), the trial court must complete a worksheet and follow the guidelines. DePalmo, 78 Ohio St.3d at 540 (noting, apparently in the alternative, that completion of the worksheet in such a case will clearly establish that the ten percent difference is met). We need not review the cases decided prior to the Supreme Court's 1997DePalmo holding as they were made without the Supreme Court's new on-point guidance.
 {¶ 21} For the foregoing reasons, the trial court's order (adopting the decision of the magistrate) is reversed as a matter of law, and this case is remanded. On remand, the court shall determine child support prospectively only, from the date of the motion, by completing a worksheet and determining if any deviation from the worksheet is requested and/or appropriate under the statute.
Donofrio and DeGenaro, JJ., concur.