OPINION
{¶ 1} Appellant, Eric Ferrall, appeals from the September 10, 2002 judgment entry of the Portage County Court of Common Pleas, Juvenile Division, finding that appellant had incurred an arrearage in his child support obligation.
 {¶ 2} On February 14, 1991, appellee, Karen Bailey, the maternal grandmother of Lorin Nicole Porter ("the minor child"), obtained legal custody of the minor child. On October 9, 1991, a complaint to determine parentage was filed. Pursuant to the trial court's October 9, 1991 judgment entry, appellant acknowledged that he is the father of the minor child and agreed to provide support and health insurance for her. On December 12, 1991, appellee filed a motion to require appellant to reimburse her for birthing expenses, which was granted on January 13, 1992. On October 10, 1992, the trial court terminated the prior order of legal custody and granted legal custody to Barbara I. Porter ("Porter"), the mother of the minor child. However, on June 3, 1993, legal custody of the minor child was granted to appellee, in which appellant was ordered to pay $200 per month in child support and Porter was ordered to pay $155 per month in child support.
 {¶ 3} Review hearings were held on July 15, 1993, July 12, 1994, July 11, 1995, and July 9, 1996. On May 1, 2001, Porter filed a motion to terminate appellee's legal custody and return legal custody to her, which was granted on July 9, 2001. Also, on May 1, 2001, appellant filed a motion to establish a companionship order, which was granted on July 9, 2001.
 {¶ 4} On September 20, 2001, appellee filed a motion for contempt against appellant for failure to pay birthing expenses and child support, for which a hearing was held on November 5, 2001. According to the trial court's November 8, 2001 judgment entry, appellee was granted judgment against appellant in the amount of $19,200 for unpaid child support, and $2,050 for unpaid maternity expenses, for a total amount of $21,250. On February 11, 2002, appellant filed a motion for contempt against Porter for failure to abide by the prior orders regarding visitation as well as a motion to determine child support arrearage. A hearing was held on April 10, 2002. Pursuant to the magistrate's decision on May 24, 2002, which was adopted by the trial court on May 28, 2002, appellant was found liable for past due child support from 1994 to 2001, in the amount of $16,750. On June 7, 2002, appellant filed an objection to the magistrate's decision. On August 12, 2002, appellee filed a written response to appellant's objection as well as an affidavit. Also, on August 12, 2002, a hearing was held regarding appellant's June 7, 2002 objection, in which the trial court did not allow new evidence to be admitted.
 {¶ 5} The facts contained in the record are as follows: at the April 10, 2002 hearing, appellee testified that after August 1994, appellant failed to pay the required child support. According to appellee, in August or September of 1994, appellant contacted her regarding appellee adopting the minor child because appellant could no longer afford to pay for her. Appellee pursued the adoption of the minor child and gave a consent to adoption form to appellant. In November 1994, appellant signed and returned the consent form to appellee. However, the consent form was never notarized. Also, appellee testified that when appellant brought the consent form back to her, she told him that Porter would not consent to the adoption. Appellee also testified that she and appellant never had any kind of agreement that if the adoption ever went through, he would not have to pay the ordered support. After that encounter, appellee stated that appellant visited the minor child once or twice.
 {¶ 6} Appellee further testified that she contacted and actually went to the Welfare Department approximately five or six times a year since 1994 to get printouts of arrearages. However, according to appellee, she was told that as of April 2001, appellant was taken off the computer and that the file was terminated or could not be located. Appellee also stated that Porter paid over $15,000 in child support to her in cash, as well as half of the health insurance, in which appellee paid the other half. On January 10, 1997, appellee sent a letter to appellant regarding his obligation to pay child support. Also, on June 21, 2001, appellee sent another letter to appellant requesting money owed for birthing expenses.
 {¶ 7} Appellant's wife, Rhonda Ferrall ("Rhonda"), testified on her husband's behalf. Rhonda stated that she was with appellant when he delivered the consent form to appellee's house. Rhonda stated that appellee's house is white and has a double living room inside. Rhonda contended that appellee told appellant that she wanted to adopt the minor child, and that appellant did not have to pay the birthing expenses. Rhonda stressed that there was never any conversation at that time indicating that Porter had refused to consent to the adoption and nothing regarding child support or visitation. Rhonda also stated that after that day, appellant did not return to visit the minor child.
 {¶ 8} Appellant testified that he paid child support through November 1994, then stopped making payments because he thought that appellee adopted the minor child. Appellant believed that his signature on the consent form would relieve him of his support obligation. Appellant stated that after signing that form in November 1994, he never visited with the minor child. According to appellant, he never knew that the adoption had not taken place until he talked with the minor child on the telephone in October or November of 2001. When asked on cross-examination whether he ever received appellee's June 21, 2001 letter requesting birthing expenses, appellant responded, "I don't remember, no." Appellant further stated that he also never received appellee's January 10, 1997 letter.
 {¶ 9} Appellee, on rebuttal, testified that Rhonda has never been inside or outside of her home. Appellee stressed that her house is blue, not white, and has a double kitchen, not a double living room, in contrast to Rhonda's testimony. Appellee also stated that she mailed appellant the January 10, 1997 and the June 21, 2001 letters, which never came back to her undelivered.
 {¶ 10} On September 10, 2002, the trial court found that appellee was entitled to child support arrearage since she had custody of the minor child during the time that the child support arrearage accrued. Because the parties agreed that the amount of the arrearage, if owed, was $16,750, the trial court determined that appellant was in arrears of his child support obligation and granted judgment to appellee in the amount of $16,750. It is from that judgment that appellant filed a timely notice of appeal on October 9, 2002, and makes the following assignments of error:
 {¶ 11} "[1.] The lower court abused [its] discretion and erred as a matter of law to the prejudice of [appellant] in denying [a]ppellant's Civil Rule 53 [m]otion to permit additional evidence that [a]ppellee misrepresented material facts under oath during the magistrate's hearing and/or in failing to allow appellant the opportunity to proffer that evidence in violation of [a]ppellant's rights to due process of law and a fair trial pursuant to the [F]ourteenth [A]mendment to the United States Constitution and Article l, Section 10 of the Ohio Constitution.
 {¶ 12} "[2.] The lower court abused its discretion and erred as a matter of law in failing to find that child support was suspended upon the delivery of a signed consent for adoption where the obligee delayed seven (7) years to enforce the support order and the obligor gave up his companionship rights to the child."
 {¶ 13} In his first assignment of error, appellant argues that he was denied due process of law and a fair trial because the trial court abused its discretion by rejecting his Civ.R. 53 motion to introduce additional evidence that the opposing party misrepresented material facts under oath and denied him the opportunity to proffer that evidence.
 {¶ 14} State v. Montgomery (1991), 61 Ohio St.3d 410, 413 states: "[t]he term `abuse of discretion' `(* * *) connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (* * *)' State v. Adams
(1980), 62 Ohio St.2d 151, 157 * * *." (Parallel citations omitted.)
 {¶ 15} Civ.R. 53(E)(4)(b) provides that "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."
 {¶ 16} This court stated in McClain v. McClain (Sept. 30, 1999), 11th Dist. No. 98-P-0002, 1999 Ohio App. LEXIS 4655, at 12-13, that "[w]hile the trial court has the discretion to refuse to consider additional evidence, the trial court must first give the offering party an opportunity to demonstrate that such evidence could not have been produced before the magistrate."
 {¶ 17} In the case at bar, at the August 12, 2002 hearing on appellant's objections to the magistrate's decision, the trial court denied appellant's Civ.R. 53 motion to present additional evidence. Appellant sought to introduce a May 29, 2002 letter from Cheyenne Carver, a caseworker from the Portage County Child Support Enforcement Agency, which indicated that there was no documentation that appellee ever contacted the agency. Also, appellant's counsel stated at that hearing that for purposes of the record, Paula Barholt from Job and Family Services had been subpoenaed because of newly discovered evidence. However, the trial court refused to allow appellant's counsel to state for the record the "newly discovered" evidence, as well as the reasons why it could not have been previously presented to the magistrate. The trial court stated that "[y]ou put the evidence on that you had on that day. You don't get newly discovered evidence. You want to do that, you go and have another hearing. This is an objection to the magistrate's decision. The case that the magistrate heard on the day he heard it as you guys presented it. That's the only issue. New evidence is not coming in."
 {¶ 18} While the trial court has the discretion to refuse to consider additional evidence, pursuant to Civ.R. 53(E)(4)(b), this court held in McClain, supra, that the trial court must first give the offering party an opportunity to demonstrate that such newly discovered evidence could not have been produced before the magistrate. In the instant matter, the trial court did not give appellant an opportunity to show that the additional evidence could not have been presented to the magistrate.
 {¶ 19} However, even if the trial court had considered appellant's additional evidence before ruling on his objections to the magistrate's decision, this court cannot say that it would have made a difference in the trial court's ruling. Given the totality of the circumstances, the trial court could have properly reached the same result. Appellant raised the defense of laches in his memorandum on the day of the April 10, 2002 hearing, rather than any evidence that appellee never contacted the child support agency. Pursuant to Civ.R. 53(E)(4)(b), there is nothing in the record which suggests that appellant, with reasonable diligence, could not have produced that evidence for the magistrate's consideration. Appellant had ample opportunity to gather that evidence and present it to the magistrate at the previous evidentiary hearings. Thus, the trial court lawfully exercised its discretion in refusing to allow that additional evidence, which was by no means "newly discovered." Therefore, appellant's first assignment of error is without merit.
 {¶ 20} In his second assignment of error, appellant argues that the trial court abused its discretion and erred when it failed to find that child support was suspended upon the delivery of a signed consent for adoption where appellee delayed seven years to enforce the support order and appellant gave up his companionship rights to the minor child. Appellant stresses that appellee knew where he was living, appeared in court numerous times during the seven-year period and has acquiesced in the non-payment of support so long as appellant did not attempt to have visitation with the minor child.
 {¶ 21} Bassett v. Bassett, 11th Dist. No. 2001-T-0129, 2002-Ohio-6587, at ¶ 10, states: "[l]aches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. Connin v. Bailey (1984),15 Ohio St.3d 34, 35. Delay, alone, in asserting a right does not constitute laches. Id. Rather, one must show that he or she has been materially prejudiced by the delay of the person asserting the claim.Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 457. Length of time in asserting a claim does not, in itself, satisfy a showing of material prejudice. Kinney v. Mathias (1984), 10 Ohio St.3d 72, 75. Material prejudice is shown by proving either (1) a loss of evidence helpful to the defendant's case; or (2) a change in the defendant's position that would not have occurred if the plaintiff did not delay in asserting his or her rights. State ex rel. Donovan v. Zajac (1997), 125 Ohio App.3d 245." (Parallel citations omitted.)
 {¶ 22} This court in Bassett, supra, at ¶ 21, also stressed that "[u]sually, child support and visitation are independent issues and support will not be modified or terminated because of denial of visitation. Fuller v. Fuller (June 14, 2000), 4th Dist. No. 99 CA04, 2000 Ohio App. LEXIS 2736. This is because the child support is intended to benefit the child. The obligation to pay child support is separate and distinct from the obligation to comply with visitation. Davis v. Davis
(1988), 55 Ohio App.3d 196." (Parallel citations omitted.)
 {¶ 23} This court does not fully endorse the rationale of our sister courts, which permit absolution of a parent's "natural duty of support" either through an agreement or the doctrine of laches. Nelsonv. Nelson (Dec. 29, 1989), 65 Ohio App.3d 800, 804, citing Tressler v.Tressler (1972), 32 Ohio App.2d 79 and Beiter v. Beiter (1970),24 Ohio App.2d 149. "To the contrary, this court adopts the more traditional philosophy that court-ordered support is for the benefit of the children * * * and, consequently, cannot be waived * * *." Nelson at 804-805, citing Rhoades v. Rhoades (1974), 40 Ohio App.2d 559.
 {¶ 24} "Simply signing [a] consent to adoption [form] [does] not release appellant from his legal responsibility of providing for his [minor child]." Przylepa v. Przylepa (1991), 77 Ohio App.3d 808, 811. "Rather, cessation of support payments and visitations * * * naturally [arise] out of the adoption [if] completed. Until the adoption, however, the duty to support and the right to visit [remain] unchanged." Id.
 {¶ 25} In the case at bar, appellant argues that he signed a consent form to allow appellee to adopt the minor child in 1994, did not pay child support after 1994, and did not visit the minor child after that time period. Appellant stresses that he believed that the adoption had taken place and that is why he accordingly gave up his visitation rights. Appellant contends that appellee made no attempts to raise the issue that he failed to pay child support for the seven-year period. Therefore, appellant argues that because he never visited nor established any relationship with the minor child after he signed the consent to adoption form, appellee was satisfied to "forgive" the past due support. Also, appellant alleges that appellee is precluded from obtaining judgment and collecting back child support under the doctrine of laches. We disagree.
 {¶ 26} There is no credible evidence in the record of an agreement between appellant and appellee which would absolve appellant of his responsibility to support his minor child or that appellee is guilty of laches. Even assuming arguendo that appellee never made any effort to collect support through the Department of Human Services, the record provides that appellee attempted to enforce the child support obligation through her two letters to appellant on January 10, 1997 and June 21, 2001. Appellant fails to prove either a loss of evidence helpful to his case, or a change in his position that would not have occurred if appellee did not delay in asserting her rights. Therefore, based onBassett, supra, appellant fails to show that he was materially prejudiced by the delay.
 {¶ 27} Also, pursuant to Nelson, supra, court-ordered child support is for the benefit of the minor child and cannot be waived. In this sense, based on Przylepa, supra, signing a consent to adoption form alone does not release appellant from his legal responsibility to provide support for his minor child. In the instant matter, Porter never gave her consent nor was the consent to adoption form even notarized. Therefore, because an adoption never occurred, which appellant should have been aware from attending the review hearings after signing the consent form in 1994, appellant had a duty to support his minor child. Thus, appellant's second assignment of error is without merit.
 {¶ 28} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
William M. O'Neill and Cynthia Westcott Rice, JJ., concur.