DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Douglas Bloom, appeals from the April 14, 2006 judgment entry entered in the Medina County Court of Common Pleas, Domestic Relations Division, denying his motion for retroactive termination of child support. We affirm.
 I. {¶ 2} After three years of marriage, Appellee, Tricia Leto-Bloom, and Appellant, Douglas Bloom, filed a petition for dissolution. Pursuant to the dissolution granted on August 26, 1997, Appellee was granted legal custody of the parties' son and Appellant was granted visitation rights. Additionally, Appellant was ordered to pay child support in the amount of $227.10 per month from November 22, 1996 through April 24, 1997, and $456.88 per month thereafter.
 {¶ 3} On February 6, 1998, Appellee filed a motion for contempt for Appellant's failure to pay child support. Appellant countered that Appellee was preventing visitation with his son. On April 16, 1998, Appellee and Appellant entered a "Contract" in which Appellee agreed not to pursue future child support from Appellant in exchange for Appellant terminating his visitation rights and consenting to a step-parent adoption of their son in the future. The "Contract" included the phrase "this agreement is unenforceable in Domestic Relations Court as it is against public policy." Upon execution of the "Contract," Appellee withdrew her motion for contempt and sent a letter to the Medina County Child Support Enforcement Agency ("CSEA") asking them to close their file. Meanwhile, Appellant ceased child support payments and visitation with his son. Appellee remarried in 2001 and the parties' son was adopted by his step-father on August 22, 2005.
 {¶ 4} On December 29, 2005, Appellant filed a motion for retroactive termination of child support to the date of the "Contract." Additionally, the Medina County CSEA filed a motion to terminate child support effective August 22, 2005, the date of their son's adoption. All parties briefed the issues and a hearing was held. The trial court denied Appellant's motion for retroactive termination of child support finding that the "Contract" between Appellant and Appellee was void and unenforceable. Further, the trial court denied Appellant's supplemental motion for retroactive termination of child support as the issues raised in the supplemental motion were not ripe. Lastly, the trial court granted Medina County CSEA's motion to terminate child support effective August 22, 2005.
 {¶ 5} Appellant timely appealed, raising one assignment of error for our review.
 II. "THE TRIAL COURT ERRED IN THE DETERMINATION THAT AS A MATTER OF LAW A CONTRACT BETWEEN AN OBLIGOR AND OBLIGEE TO TERMINATE FUTURE CHILD SUPPORT IS VOID AND UNENFORCEABLE FOR BEING AGAINST PUBLIC POLICY."
 {¶ 6} In his sole assignment of error, Appellant alleges that the contract entered into between him and Appellee on April 16, 1998 is not void and against public policy. Appellant argues that a contract between a husband and wife to relieve one party of future child support obligations in exchange for terminating visitation rights and giving full consent to adoption is a valid and enforceable contract to be recognized by the domestic relations court. We disagree.
 {¶ 7} As an initial matter, we must address our standard of review. We review matters involving child support under the abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. However, the issue of whether an agreement to waive future child support is enforceable presents an issue of law.Jefferson Cty. Child SupportEnforcement Agency ex rel. Brown v. Horkulic, 7th Dist. No. 02 JE 43, 2003-Ohio-1242, at ¶ 12. An appellate court reviews such legal determinations de novo without any deference to the conclusion of the trial court. Id.
 {¶ 8} A parent has a statutory duty to financially support his or her own children. Boltz v. Boltz (1986), 31 Ohio App.3d 214, 215; In reDissolution of Marriage of Lazor (1991), 59 Ohio St.3d 201, 202, superseded by statute on other grounds as stated in Mazzuckelli v.Mazzuckelli (1995), 106 Ohio App.3d 554, 556. See R.C. 2919.21, 3109.05, and 3113.06. This duty is also owed to the general public and state, as the state would be responsible to assume the support of the child at the public's expense should the parent fail to support the child.Stapleton v. Stapleton (April 19, 1995), 9th Dist. No. 2358-M, at *1;Nelson v. Nelson (1990), 65 Ohio App.3d 800, 804. Court-ordered child support is designed to benefit the child and not the custodial parent.Stapleton, at *1, citing Nelson, 65 Ohio App.3d at 804. Accordingly, a parent cannot "contract away any right which [the] minor children have to support from [the other parent] * * *." Orefice v. Orefice (Dec. 19, 1996), 8th Dist. No. 70602, at *3. "[I]t would be unreasonable in all circumstances to permit the parents, either individually or jointly, to absolve themselves of this duty of support by entering into an agreement between themselves to that effect subsequent to a court order."Nelson, 65 Ohio App.3d at 804. Thus, the custodial parent may not form an agreement to relieve the non-custodial parent of future child support payments. Id. However, an exception lies with past due support. Id. The obligee may enter into an agreement that forgives the obligor of past due child support. Id.
 {¶ 9} However, this does not preclude parents from agreeing to subsequent modifications of support orders that are in writing and approved by the trial court. Crow v. Crow (April 16, 1990), 12th Dist. No. CA89-06-087, at *4 (Jones, P.J., dissenting). In order for the parents' agreement altering child support to have any legal effect, the parents need to seek court approval of their agreement and the agreement must comport with the Child Support Guidelines and the standards set forth in Marker v. Grimm (1992), 65 Ohio St.3d 139. See Lytle v.Lytle (1998), 130 Ohio App.3d 697, 703; Nelson, 65 Ohio App.3d at 805.DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 540. While the law generally favors settlements, the courts recognize that compromises in child support may not always be in the best interests of the child.DePalmo, 78 Ohio St.3d at 540. Accordingly, the trial court must examine the parents' proposed agreement to ensure that it complies with the Child Support Guidelines. Id.
 {¶ 10} In this matter, the parents signed a "Contract" relieving Appellant's obligations to pay future child support in exchange for his consent to the stepparent adoption and termination of his visitation rights. However, the parties never sought court approval of their agreement. Accordingly, the trial court was unable to review the parties' "Contract" to ensure that it complied with the Child Support Guidelines and was in the child's best interests. As the "Contract" was not approved by the trial court, it has no legal effect and Appellant is liable for the child support accrued between the time the "Contract" was signed and his son's adoption. SeeDePalmo, supra.
 {¶ 11} The instant case is distinguishable from this Court's decision in Stapleton in which the parties had an agreement to release the father from paying future child support in exchange for his consent to a step-parent adoption. Stapleton, supra. The facts in Stapleton reveal that (1) the trial court incorporated the parties' agreement into a court order and (2) the adoption was never completed. Id. at *1. Based on the parties' agreement and the earlier court order, the trial court relieved the father of his child support obligation from the date of the agreement (1990) until the time when the referee ordered the payments resume (1994). Id. at *2. The issue in Stapleton was whether or not the agreement precluded the reinstatement of child support after an unsuccessful adoption attempt. The trial court held, and we affirmed, that the reimposition of child support payments was appropriate despite the parties' agreement to relieve all future child support. Id. Another distinguishing factor in Stapleton is that it was decided prior toDePalmo; thus, compliance with the Child Support Guidelines was unnecessary in Stapleton.[1]
 {¶ 12} Accordingly, we find that the parties' "Contract" is unenforceable as the parties failed to obtain court approval and have the trial court confirm that the agreement comported with the Child Support Guidelines. Appellant's assignment of error is overruled.
 III. {¶ 13} Appellant's assignment of error is overruled. The judgment of Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
EDNA J. BOYLE
FOR THE COURT
SLABY, P. J. MOORE, J. CONCUR
[1] We recognize that there are a minority of districts in Ohio that have upheld agreements between parents that terminate child support in exchange for the cessation of visitation rights or consent to step-parent adoption. See Crow v. Crow (April 16, 1990), 12th Dist. No. CA89-06-087; Lawhorn v. Lawhorn (Sept. 7, 1990), 2d Dist. No. 11914;Tressler v. Tressler (1972), 32 Ohio App. 2d 79. However, these cases, as with Stapleton, were decided prior to DePalmo and thus were not subject to the requirements of court review and approval in accordance with the statutory Child Support Guidelines.