[Cite as *Salyer v. Newman*, 2011-Ohio-6676.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY


KEVIN SALYER,                               :

    Plaintiff-Appellant,                    :        Case No.   11CA4

    vs.                                     :

TONYA NEWMAN,                               :        DECISION AND JUDGMENT ENTRY


    Defendant-Appellee.[1]                  :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        Susan M. Zurface Daniels, P.O. Box 589, Hillsboro, Ohio
                                             45133

COUNSEL FOR APPELLEE
 HIGHLAND COUNTY CHILD
SUPPORT ENFORCEMENT
 AGENCY:                      Richele M. Stroop, 1575 North High Street, Suite 100,
                                             Hillsboro, Ohio 45133

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-15-11

ABELE, J.

{¶ 1}   This is an appeal from a Highland County Common Pleas Court, Juvenile Division, judgment that denied the request filed by Kevin Salyer, defendant below and appellant herein to (1) terminate child support and (2) forgive arrearages.   The court also rejected appellant's request to consider reinstating his driver's licence or granting occupational driving privileges.

_____

[1] Newman has not filed an appearance in this appeal.

{¶ 2}    Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN REFUSING TO ADOPT THE
AGREEMENT OF THE PARTIES TO FORGIVE THE CHILD
SUPPORT ARREARAGE WHERE NO SUPPORT IS DUE TO THE
STATE OF OHIO."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN FAILING TO HEAR EVIDENCE
OR TO SET THE MATTER FOR FURTHER HEARING UPON
ORAL MOTION FOR REINSTATEMENT OF DRIVER'S LICENSE
OR FOR DRIVING PRIVILEGES, AS THE SAME IS WITHIN THE
JURISDICTION OF THE COURT PURSUANT TO R.C. 4510.73."

{¶ 3}    On June 15, 2005, appellant filed a complaint to establish paternity and to allocate parental rights and responsibilities.   Subsequently, the trial court ordered appellant to pay $155.49 in monthly child support.   Over the next year, however, appellant failed to pay child support.   On June 2, 2006, the court entered an "agreed entry forgiving arrearage."

{¶ 4}    On August 14, 2008, CSEA filed a motion to show cause why appellant should not be held in contempt for failing to pay child support.   When appellant made the payment, CSEA dismissed the motion.

{¶ 5}    On August 10, 2010, CSEA filed another motion to show cause.   At the hearing, appellant admitted that he failed to pay child support.   Appellee proposed that appellant pay $873.18 within the next sixty days and that appellee would then agree to have appellant's driver's license reinstated.   The trial court found appellant in contempt, but delayed sentencing in order to allow appellant to request the municipal court to reinstate his license.   The court stated that it would not consider a request to reinstate his license until after appellant made a request in the

municipal court.   The court also directed appellant to register with a job service and to present proof of registration within thirty days.

{¶ 6}   On January 25, 2011, the trial court held the sentencing hearing.   At the hearing, Newman (the child's mother) stated that she did not want appellant incarcerated and that she would agree to terminate the child support order and to forgive the arrearage.   Appellee informed the court that Newman does not receive cash public assistance, but that she does receive a medical card.   The court, however, rejected the request to terminate the child support order and to forgive the arrearage.   The court stated:   "* * * I'm not going to terminate any of the child support obligation under this set of facts and scenario for, uh, Garrison.   There are some cases if the child were to be adopted and that type of thing where the child support is terminated.   I'm not going to do that at this time; nor to allow the arrearage to be forgiven."

{¶ 7}   On January 26, 2011, the trial court journalized its entry regarding appellant's sentence and ordered appellant to pay the court costs, but did not impose any term of incarceration.  The court also directed appellant to submit legal authority for his driver's license reinstatement request, but appellant failed to do so.   This appeal followed.

I

{¶ 8}   In his first assignment of error, appellant asserts that the trial court erred by refusing to adopt the parties' agreement to forgive the child support arrearage.   Appellee appears to likewise assert that the trial court should have upheld the parties' agreement to forgive the arrearage.

{¶ 9}   Child-support issues are generally reviewed under the abuse of discretion standard. See, e.g., Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.   As we have stated

many times, an abuse of discretion "connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard of review, appellate courts must not substitute their judgment for that of the trial court's. See, e.g., In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181. Furthermore, as to issues of fact appellate courts must generally presume that the trial court's findings are correct because the trier of fact is best able to observe the witnesses and to use those observations to weigh witness credibility. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273; see, also, Mahlerwein v. Mahlerwein 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at ¶19.

{¶ 10} A parent has a statutory duty to support his or her child. See R.C. 3103.031. "This duty is also owed to the general public and state, as the state would be responsible to assume the support of the child at the public's expense should the parent fail to support the child." Day v. Bloom, Medina App. No. 06CA0039-M, 2006-Ohio-6957, ¶8, citing Stapleton v. Stapleton (April 19, 1995), Medina App. No. 2358-M; Nelson v. Nelson (1990), 65 Ohio App.3d 800, 804, 585 N.E.2d 502.

{¶ 11} Despite the statutory duty of support, the parties to a child support order may agree to modify a child support arrearage. See Byrd v. Knuckles, 120 Ohio St.3d 428, 2008-Ohio-6318, 900 N.E.2d 164, ¶1. In Byrd, the court explained:

> "R.C. 3119.84, the exception to R.C. 3119.83, states, 'A court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.' This provision plainly states

that a court may retroactively modify a child-support payment that became due after the obligee of the order had notice of the petition to modify the support order. In this case, not only did Reeder receive notice of the petition to modify the support order, she did not contest the petition in juvenile court, in the court of appeals, or before this court. It is clear to us that R.C. 3119.83 and 3119.84 do not categorically prohibit juvenile courts from modifying support orders. See Nelson v. Nelson (1990), 65 Ohio App.3d 800, 805, 585 N.E.2d 502 ("this court is cognizant that, in certain situations, equitable principles and equitable defenses, when established by a proper evidential predicate, may be applicable, which would permit the parents to enter into an extrajudicial agreement that may have retroactive application regarding child support").

Further, nothing in R.C. 3119.83 or any other part of the statutory scheme indicates that it is intended to nullify reasonable agreements reached by the parties to a child-support order. R.C. 3119.83 prohibits judges from retroactively modifying child-support orders; it does not prohibit parties from agreeing to modify child-support orders. See United States Department of Health and Human Services, Administration for Children and Families, Office of Child Support Enforcement, Policy Interpretation Question PIQ-99-03, Compromise of Child Support Arrearages (Mar. 22, 1999) (child-support arrearages may be compromised by the parties, but judicial "retroactive modification of arrearages * * * without the concurrence of the obligee (or State assignee) * * * is expressly prohibited").

Finally, pursuant to R.C. 3123.18, when a court has determined that a child-support obligor is in default under a support order, the arrearage becomes a "final judgment which has the full force, effects, and attributes of a judgment." Appellee Clermont County Department of Job and Family Services and both amici, Butler County Child Support Enforcement Agency and the Ohio Child Support Directors' Association, argue that the child-support arrearage in this case is a judgment and, therefore, that the parties should be free to compromise it. See Sowald & Morganstern, Domestic Relations Law (4th Ed.2002) 993, 20:27 ("As a general rule, arrearages may be forgiven by the obligee as long as public assistance is not involved"). In this case, which does not involve public assistance, we conclude that the judgment, like any other judgment in Ohio, can be compromised and settled. See Columbiana Cty. Bd. of Commrs. v. Samuelson (1986), 24 Ohio St.3d 62, 63, 24 OBR 142, 493 N.E.2d 245; Gholson v. Savin (1941), 137 Ohio St. 551, 560-562, 19 O.O. 309, 31 N.E.2d 858.

Nothing in this opinion should be construed to require judges to accept all agreements regarding the modification of child-support arrearages that are presented to them. There could be situations in which agreements are unreasonable, made under duress, or otherwise flawed. It is clear in this case, however, that the agreement between Reeder and Knuckles suffers from none of these defects. To the contrary, the agreement facilitated the adoption of their child by Reeder's husband. We reverse the judgment of the court of appeals and remand the cause to the juvenile court for further proceedings consistent with this opinion."

Id. at ¶¶4-7.

{¶ 12} Before Byrd, the Ohio Supreme Court recognized that compromises in child support may not always be in the best interests of the child.   See DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 540, 679 N.E.2d 266.   As the DePalmo court explained:

> "The law favors settlements.   However, the difficult issue of child support may result in agreements that are suspect.   In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures.   The compromises may be in the best interests of the parents but not of the child.   Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support."

Additionally, courts have stated that when public assistance is involved, a parent's right to waive a child support obligation is limited.   See Eckliff v. Walters, 168 Ohio App.3d 727, 2006-Ohio-4817, 861 N.E.2d 843, ¶13, fn.2.

> "'Parents' rights to waive child support obligations concerning their minor children are limited.   This is particularly true when one parent is receiving public [assistance benefits] to support the child when the other parent is not making court-ordered child support payments.   McDonnold v. McDonnold (1994), 98 Ohio App.3d 822, 649 N.E.2d 1236.   In these circumstances, the parent with the child is required to assign to the state the right to support from the non-paying parent as of the date the welfare benefit payments commence. * * * The parent with the child cannot forgive child support obligations from the non-paying parent because this right to collect child support has been assigned to the state paying [benefits].'"

Id., quoting Mudry v. Mudry (May 8, 1997), Cuyahoga App. No. 70847.

{¶ 13} In the case at bar, it appears that the trial court may have interpreted case authority to stand for the proposition that an agreement to modify a child support arrearage is valid only if it facilitates an adoption or for some other specific purpose.   The court stated: "There are some cases if the child were to be adopted and that type of thing where the child support is terminated.   I'm not going to do that at this time; nor to allow the arrearage to be forgiven."   We, however, do not

interpret Byrd in a similar manner. We do not believe that Byrd appears to suggest that agreements to modify a child support arrearage are limited to circumstances involving an adoption. Rather, under Byrd it appears that agreements may be accepted unless the "agreements are unreasonable, made under duress, or otherwise flawed." Id. at ¶7. Thus, we remand this matter to the trial court so that it may reconsider its decision in light of our interpretation of Byrd. We emphasize, however, that our decision to remand should not be construed as a comment on the merits of the court's decision. In other words, on remand the trial court may decide to reject the parties' agreement as being unreasonable, made under duress, or otherwise flawed.[2]

{¶ 14} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's first assignment of error and remand the matter to the trial court for further consideration.

II

{¶ 15} In his second assignment of error, appellant asserts that the trial court erred by refusing to consider his driver's license reinstatement request. Appellant asserts that R.C. 4510.73 provided the juvenile court with the authority to entertain his request.[3]

---

[2] The Byrd court does not elaborate on what would make an agreement "otherwise flawed." Prior case law regarding (1) child support and public assistance and (2) child support as being primarily for the child's best interests may be helpful in determining whether an agreement would be "otherwise flawed." For example, the court may determine that the parties' agreement is "otherwise flawed" when the mother receives public assistance in the form of a medical card. Furthermore, it appears that the trial court could determine that the parties' agreement is "otherwise flawed" if it is not in the child's best interests.

[3] R.C. 4510.73 states:

     (A) It is the intent of this section to allow all issues concerning driver's licenses to be litigated in a single forum, not to eliminate any forum venue in existence on the effective date of this section.
     (B) Notwithstanding any provision of the Revised Code to the contrary, any court whose jurisdiction has been invoked under this chapter or any other chapter of the Revised Code regarding a driver's license matter, other than a matter involving a commercial driver's license, is hereby conferred concurrent jurisdiction to adjudicate all issues and appeals regarding that driver's license matter, including issues of validity, suspension, and, with regard to any suspension imposed

{¶ 16} "The jurisdiction of a court is that power conferred upon it by law, by which the court is authorized to hear, determine and render final judgment in an action, and to enforce its judgment by legal process." Borkosky v. Mihailoff (1999), 132 Ohio App.3d 508, 511, 725 N.E.2d 694, citing State ex rel. Ellis v. Bd. of Deputy State Supervisors of Cuyahoga Cty. (1904), 70 Ohio St. 341, 349, 71 N.E. 717. "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time. It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.' [State ex rel. Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70, 75, 701 N.E.2d 1002]; Patton v. Diemer (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus." Pratts v. Hurley, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶11 (citations omitted). Moreover, the existence of a trial court's subject matter jurisdiction is a question of law that we review de novo. State ex rel. ACCSEA v. Balch, Athens App. No. 06CA26, 2007-Ohio-7168, ¶22; Yazdani-Isfehani v. Yazdani-Isfehani, Athens App. No. 06CA6, 2006-Ohio-7105, ¶20, citing State v. Moore, Highland App. No. 03CA18, 2004-Ohio-3977, ¶8, and Burns v. Daily (1996), 114 Ohio App.3d 693, 701,

---

by the bureau of motor vehicles, driving privileges. Nothing in this section shall be construed as applying to any issue involving a commercial driver's license, except that a court may adjudicate an issue that does not relate to a commercial driver's license but involves a holder of a commercial driver's license so long as the court does not alter the status of that holder's commercial driver's license. In the event that another court has obtained jurisdiction over one or more driver's license suspensions imposed by the bureau involving the same driver's license holder, that jurisdiction may not be divested by an action filed under this section unless that court transfers its jurisdiction over that holder's driver's license issue by issuance of a court order.

(C)(1) The court's jurisdiction over a particular driver's license issue may be invoked by a motion, appeal, or petition filed by a holder of a driver's license. Any such motion, appeal, or petition shall state the issue with respect to which the court's jurisdiction is invoked.

(2) When a court's jurisdiction over a driver's license issue is properly invoked, that court shall adjudicate all issues and appeals brought before the court regarding that issue, unless the motion, appeal, or petition is withdrawn.

* * * *

683 N.E.2d 1164.

{¶ 17} In the case at bar, the trial court did not expressly determine whether it possessed jurisdiction over appellant's request. Instead, the court directed appellant to first seek relief in the municipal court, which suspended his license for failure to pay fines.[4] Because the trial court did not enter any judgment regarding its jurisdiction, at this juncture we have nothing to review. Therefore, we decline to consider appellant's argument. See, e.g., Sites v. Sites, Lawrence App. No. 99CA19, 2010-Ohio-2748, ¶30; Lang v. Holly Hill Motel, Inc., Jackson App. No. 05CA6, 2005-Ohio-6766, at ¶22, citing Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (stating that "we, as an appellate court, should not first consider an argument that the trial court did not address"); see, also, Murphy ("If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court."). Moreover, we find nothing irrational with the court's desire to require appellant to first seek relief in the municipal court,[5] the court from which his license suspension arose.

---

[4]Apparently, the intent of this legislation is to allow all issues concerning a driver's license suspension to be litigated in a single forum. It further appears that the thrust of this legislation is to provide some avenue to remedy problems associated with Ohio Bureau of Motor Vehicles administrative license suspensions. See Ohio Legislative Service Commission Bill Analysis and Comments to H.B. 338. Courts may order the BMV to renew driver's licenses. Additionally, the statute provides that if one court has obtained jurisdiction over a license suspension, that jurisdiction may not be divested by an action filed under the bill unless that court transfers its jurisdiction. When viewed in context with the situation in the case sub judice, the statute does not appear to provide the type of remedy that appellant seeks.

[5] While we find it unnecessary to determine whether the jurisdictional priority rule directly applies in the case at bar, we find the rule helpful in explaining the juvenile court's decision to require appellant to first seek relief in the municipal court.
    The jurisdictional-priority rule generally provides that "[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." State ex rel. Judson v. Spahr (1987), 33 Ohio St.3d 111, 113, 515 N.E.2d 911, citing State ex rel. Phillips v. Polcar (1977), 50 Ohio St.2d 279, 364 N.E.2d 33. For the rule to apply, the parties and the subject matter must be the same. Adams Robinson Enterprises v. Envirologix Corp. (1996), 111 Ohio App.3d 426, 429, 676 N.E.2d 560. Even if this requirement is met, the rule does not apply when "the conflict of jurisdiction is between a court of general jurisdiction and one whose limited powers are inadequate to afford full relief to the parties." Judson, at 113, 515

{¶ 18} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

JUDGMENT ENTRY

It is ordered that the judgment be reversed in part, affirmed in part, and remanded for further proceedings.   Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J.: Concurs in Judgment & Opinion
McFarland, J.: Concurs in Judgment Only

For the Court

---

N.E.2d 911, citing State ex rel. McHenry v. Calhoun (1950), 87 Ohio App. 1, 93 N.E.2d 317; see, also, Duckworth v. Burger King Corp., 159 Ohio App.3d 540, 548, 824 N.E.2d 592, 2005–Ohio–294, ¶15; Enz v. Lewis, Scioto App. No. 10CA3357, 2011-Ohio-1229, ¶12, quoting Heisler v. Heisler, Hocking App. No. 09CA12, 2010-Ohio-98, ¶19 (stating that "'[w]here courts share concurrent jurisdiction, the general rule is that the court where proceedings are first properly initiated acquires the right to adjudicate the matter to the exclusion of all other courts'"); State ex rel. Brady v. Pianka, 106 Ohio St.3d 147, 2005-Ohio-4105, 832 N.E.2d 1202, ¶13, quoting State ex rel. Shimko v. McMonagle (2001), 92 Ohio St.3d 426, 429, 751 N.E.2d 472 ("'In general, the jurisdictional priority rule applies when the causes of action are the same in both cases, and if the first case does not involve the same cause of action or the same parties as the second case, the first case will not prevent the second'").

BY:_____

Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.