[Cite as *Riley v. Riley*, 2013-Ohio-1604.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| CAROLYN RILEY, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0037** |
| THOMAS K. RILEY, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 DR 42.

Judgment: Affirmed in part, reversed in part, and remanded.

*Robert M. McNair*, McNair & Geary Co., L.P.A., 35 West Jefferson Street, Jefferson, OH 44047; *William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Kyle B. Smith*, Smith & Miller, 36 West Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Thomas Riley, appeals the July 19, 2012 Judgment Entry of the Ashtabula County Court of Common Pleas, terminating his marriage to plaintiff-appellee, Carolyn Riley, dividing the marital estate, establishing spousal support, and ordering him to pay a portion of Carolyn's legal fees. The issues before this court are whether an award of spousal support is unreasonable when it renders the recipient with a larger income than the payor; whether the decision to fix the date of the termination of marriage as the final day of hearing is unreasonable when the parties

separated at the time the divorce was filed; whether a division of marital assets is unreasonable where the value of the estate is divided approximately 52.3%-47.7%; and whether it was unreasonable to order one party to pay legal fees where the recipient had the ability (more net income and fewer expenses) to pay her own fees. For the following reasons, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

{¶2} On February 4, 2010, Carolyn filed a Complaint for Divorce against Thomas.

{¶3} On May 13, 2010, Thomas filed an Answer and Counterclaim for Divorce.

{¶4} On April 18 and June 17, 2011, hearings were held on the Complaint and Counterclaim.

{¶5} On July 19, 2012, the trial court issued its Judgment Entry. The court found that the parties were married on August 7, 1986, and that one child, now emancipated, was born as issue of the marriage. The court granted the parties a divorce on the grounds of incompatibility. The court established the termination date of the marriage, divided the marital estate, and ordered Thomas to pay spousal support. The details of the trial court's order will be set forth under the appropriate assignments of error.

{¶6} On August 10, 2012, Thomas filed a Notice of Appeal. On appeal, Thomas raises the following assignments of error:

{¶7} "[1.] The court erred in awarding spousal support to plaintiff in the amount of $1,500.00 per month when such award left plaintiff a larger income than defendant."

{¶8} "[2.] The court erred in determining the termination of marriage to be the first day of the final hearing, April 18, 2011, rather than February 4, 2010, the date of separation."

{¶9} "[3.] The court erred when it failed to equally or equitably divide the assets in the marital estate."

{¶10} "[4.] The court erred in ordering defendant to pay plaintiff's legal fees in the amount of $7,500.00."

{¶11} In the first assignment of error, Thomas challenges the trial court's award of spousal support.

{¶12} "In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property * * *, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." R.C. 3105.18(B).

{¶13} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors: (a) The income of the parties * * *; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; * * * (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties * * *; * * * (n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C)(1).

3

**{¶14}** "[W]hen reviewing the propriety of a trial court's determination in a domestic relations case," including spousal support, "[the Ohio Supreme Court] has always applied the 'abuse of discretion' standard." *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶15}** The trial court ordered Thomas to pay $1,500 per month for spousal support, "commencing on June 1, 2012 for a period of Five (5) years and subject to further Order of this Court." The court made the following findings with respect to spousal support:

**{¶16}** In 2010, [Carolyn] was employed by Verizon Wireless in customer service and her gross wages were Thirty Thousand Four Hundred Fifty Dollars ($30,450.00). [Thomas] was employed in 2010 by FirstEnergy Corporation doing environmental work with his gross wages being Eight[y] Thousand Five Hundred Three Dollars ($80,503.00). [Thomas] seems to be secure in his employment for the future.

**{¶17}** [Carolyn] received a verbal warning in February, 2011 from her supervisor concerning the performance of her duties and testified that she has been informed that if her performance does not improve, she will be terminated from employment.

**{¶18}** [Carolyn] had been employed at the Perry Nuclear Power Plant on a full-time basis but quit her employment to take care of the parties' son and when she resumed employment, she did seasonal work and was not employed full-time until she became employed by Verizon. She has been employed at Verizon for Four (4) years.

4

**{¶19}** [Carolyn] is Fifty-Four (54) years old and testified that she has been under the care of a psychiatrist, Doctor Feldman, for at least Six (6) years for attention deficit disorder and depression for which she takes Prozac and Adderall. She testified that her condition has affected her employment at Verizon. [Carolyn] testified that she applied for disability and then changed her mind and tried to seek employment on her own.

**{¶20}** [Thomas] is Fifty-Three (53) years old and commenced his employment with FirstEnergy in 1982. He is in good health.

**{¶21}** The parties were married for over Twenty-Four (24) years.

**{¶22}** The parties enjoyed a comfortable middle-class standard of living.

**{¶23}** [Carolyn] has at least Two (2) years of college education, studying engineering and art, however, the Court finds that [Carolyn's] current medical issues, although self-reported by her testimony, but not substantially rebutted by [Thomas], minimizes the positive effects of [Carolyn's] education. [Carolyn's] counsel explained that he spent additional time working with Carolyn in preparing for this case because of her Attention Deficit Disorder.

**{¶24}** [Thomas] did not attend college and served Six (6) years in the United States Navy where he attended Nuclear Power School and served on submarines. He then became employed at the Perry Nuclear Power Plant as a plant operator. His training in the United States Navy has provided him with secure employment with a comfortable income with FirstEnergy Corporation.

5

**{¶25}** [Carolyn] requested spousal support when she filed her divorce complaint which was opposed by [Thomas] and a hearing was set for all pending motions. The Court has been advised by [Carolyn's] prior counsel that the pending matters had been settled but no Judgment Entry was submitted and on May 6, 2010, the Court noted that fact and set a pretrial for June 7, 2010 which was continued by [Carolyn] and reset for July 8, 2010, which was again continued by [Carolyn] and reset for September 2, 2010, at which time counsel requested additional time to complete discovery with a final hearing set for December 14, 2010 and reset again to February 17, 2011 by Judge H.F. Inderlied, Jr., acting judge in this judge's absence and then reset for April 18, 2011.

**{¶26}** The Court noted during direct examination of [Carolyn] at the final hearing on April 18, 2011 that there had not been a subsequent specific request to establish spousal support in this matter except for the original motions filed by [Carolyn], which the Court had been advised had been settled.

**{¶27}** Counsel for [Thomas] labels the withdrawal of Thirty-Three Thousand Dollars ($33,000.00) from the parties' joint checking/savings account as financial misconduct, however, the Court declines to make that finding of fact since [Carolyn] was not receiving spousal support for a significant period of time and the Court will consider that sum as spousal support, plus division of marital property.

{¶28} Thomas raises several arguments as to why the spousal support order constitutes an abuse of discretion.

{¶29} First, Thomas asserts that, in light of Carolyn's employment and education prior to marriage, and recent employment history, the trial court could not find "that she is unable to work or limited in her working capacity without medical testimony to that effect."

{¶30} Thomas cites no authority for the proposition that expert testimony is necessary for a trial court to consider a party's mental condition in establishing an award of spousal support. Moreover, the court did not find that Carolyn was unable to work or is prevented from working. Rather, the court recognized Carolyn's mental condition as an impediment to her obtaining better employment than she currently enjoys and a contributing factor to the instability of her present employment.

{¶31} The case relied upon by Thomas, *Sasey v. Sasey*, 11th Dist. No. 93-P-0008, 1993 Ohio App. LEXIS 4782 (Sept. 30, 1993), is distinguishable and/or supports the spousal support award in the present case. In *Sasey*, the appellee, "in relatively poor health, suffering from a combination of blood pressure and prostate problems," was ordered to pay appellant, "diagnosed as a bi-polar manic depressive" and unemployed, spousal support for a period of five years. *Id.* at *2-3. On appeal, the appellant argued she was entitled to a longer period of support, based on the evidence of "a letter from her attending psychiatrist * * *, which stated that in his opinion, appellant was permanently disabled as a result of her mental disorder." *Id.* at *4. This court affirmed the award, noting that the "appellant did not present any credible evidence indicating that she is completely unable to work, or * * * affirmatively demonstrate that she was totally incapable of modestly supplementing her income." *Id.* at *4-5.

7

{¶32} In the present case, the letter from Carolyn's psychiatrist merely attested the fact of her diagnosis and that she is receiving "appropriate treatment." Carolyn and her attorney testified regarding the effects of her mental condition; and Thomas acknowledged her condition as well as her "tics." The trial court's consideration of this evidence was consistent with its relative probative value and, as in *Sasey*, the evidence was adequate to support an award of five years.

{¶33} Thomas next argues that the spousal support award is unreasonable because it causes Carolyn to have a greater monthly income than his own. According to Thomas, the spousal support award increases Carolyn's monthly income from $2,000 to $3,500, while decreasing his monthly income from $4,827 to $3,327. We disagree.

{¶34} As reported in the parties' W-2 Forms, Carolyn received taxable wages of $28,628.51 in 2010, or about $2,385.71 per month; Thomas' taxable wages in 2010 were $80,503.09, or about $6,708.59 per month. Thomas' lower monthly figures are the result of deductions made for taxes, saving plans/401K, and health and life insurance. Thomas' lower monthly income reflects the fact that he contributes $201 every biweekly pay period to savings, whereas Carolyn only contributes $70.10 per biweekly pay to savings. Thomas also pays for health and life insurance out of his biweekly pay, an expense that Carolyn was not paying for at the time of the divorce. While savings contributions and insurance payments reduce Thomas' monthly income to a greater extent than Carolyn's, he enjoys the benefits that accrue with these contributions.

{¶35} Thomas also fails to account for the tax implications of the spousal support award, which constitutes taxable income for the recipient and a tax deduction for Thomas. In other words, spousal support decreases Thomas' taxable income while increasing Carolyn's, a change that was not reflected in the parties' W-2 Forms

8

admitted at the hearings or otherwise acknowledged. Leaving aside the deductions for savings, insurance, and taxes, the spousal support award increases Carolyn's annual taxable wages to $46,628.51, or $3,885.71 per month, which is still significantly less than Thomas' annual taxable wages of $62,503.09, or $5,208.59 per month.

**{¶36}** Finally, Thomas argues that the trial court abused its discretion by ordering support for "a period of five years and subject to further order of the Court." By retaining jurisdiction over the award, the court retains the ability to extend the duration of the award. *Kopczak v. Kopczak*, 11th Dist. No. 2011-A-0056, 2012-Ohio-3014, ¶ 22.

**{¶37}** The trial court's retention of jurisdiction does not constitute an abuse of discretion. On the contrary, many courts, including this one, have recognized that "if spousal support is ordered for a substantial period of time and the economic condition of the parties is likely to change, a trial court abuses its discretion by not providing that the order is subject to later modification." (Citation omitted.) *Edwards v. Edwards*, 2nd Dist. No. 25309, 2013-Ohio-117, ¶ 57; *Humphrey v. Humphrey*, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, ¶ 49 ("[b]ased on the circumstances in a specific case, a trial court's failure to retain jurisdiction to modify a spousal support award based on changes in the parties' incomes, may constitute a breach of discretion"); *Straube v. Straube*, 11th Dist. No. 2000-L-074, 2001 Ohio App. LEXIS 3528, *14 (Aug. 10, 2001) (the trial court abused its discretion by not retaining jurisdiction: "[w]hile the record in the case *sub judice* suggests that the parties' incomes will likely remain the same, six years is too long a duration for the court to predict the parties' incomes and monthly expenditures").

**{¶38}** Given the circumstances of Carolyn's employment history and mental condition in the present case, the trial court was well within its discretion to retain jurisdiction. We note, however, that the retention of jurisdiction to modify or extend the

award does not necessarily mean that the court may exercise that jurisdiction. Rather, a court's exercise of jurisdiction to modify a support award is dependent upon the findings "(1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus.

**{¶39}** The first assignment of error is without merit.

**{¶40}** In the second assignment, Thomas argues the trial court abused its discretion by fixing April 18, 2011, the first day of the final hearing, as the termination date of the marriage.

**{¶41}** The term "[d]uring the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation." R.C. 3105.171(A)(2)(a). "If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

**{¶42}** A trial court enjoys broad discretion in determining the dates constituting the duration of the marriage. *Berish v. Berish*, 69 Ohio St.2d 318, 319-320, 432 N.E.2d 183 (1982).

**{¶43}** The trial court "select[ed] the final hearing date of April 18, 2011 as the termination of the parties' marriage due to the parties engaging in protracted discovery in this matter from the time of the filing of the complaint and continuing after the pretrial

10

held on September 22, 2010, when both parties requested an additional Sixty (60) days to complete discovery and conduct depositions before the final hearing which was set for December 14, 2010."

**{¶44}** Thomas contends the termination date of the marriage should be February 4, 2010, the date Carolyn filed for divorce, since, as a practical matter, that date was the de facto termination of the marriage. Thomas further contends that the April 18, 2011 date is inequitable in that he continued to make contributions toward his savings plan during the course of the protracted court proceedings, despite the parties having established separate lives. We disagree.

**{¶45}** "Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain separate residences, separate business activities and/or separate bank accounts." (Citation omitted.) *Marini v. Marini*, 11th Dist. Nos. 2005-T-0012 and 2005-T-0059, 2006-Ohio-3775, ¶ 13. However, "[c]ourts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home." (Citation omitted.) *Id.* "Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." (Citation omitted.) *Id.*

**{¶46}** In the present case, the parties separated at the time the Complaint for Divorce was filed and did not attempt to reconcile. These facts do not compel the trial court to choose a de facto termination of marriage date. Although Thomas voluntarily vacated the marital home, Carolyn had filed an Emergency Ex Parte Motion for Occupancy of the residence. Also following their separation, Thomas continued to pay

11

the car and homeowner's insurance, the property taxes, and helped Carolyn maintain the home.

{¶47} The trial court selected the date of the final hearing based on the protracted period of discovery before the final hearing. Thomas fails to set forth a convincing argument why this date is inequitable. Thomas cites the increase in value of his savings plan during the course of the proceedings. As Carolyn points out, this increase in value was largely passive based on the value of the plan at the time of separation. Thus, the court's choice of the hearing date for the termination of marriage effectively awards Carolyn for this increase, to which she was entitled.

{¶48} The second assignment of error is without merit.

{¶49} In the third assignment of error, Thomas argues the trial court erred by not equally/equitably dividing the marital estate.

{¶50} "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property," and "divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). With certain exceptions, "the division of marital property shall be equal." R.C. 3105.171(C)(1). "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

{¶51} The division of marital property is entrusted to the broad discretion of the trial court. *Berish*, 69 Ohio St.2d at 319-320, 432 N.E.2d 183.

{¶52} The trial court identified the following marital assets: the marital residence ($142,500); personal property ($41,000); Carolyn's 401K ($18,500); Thomas' savings

12

plan as of March 2011 ($189,000); Thomas' pension plan as of February 2010 ($193,709). The court made the following division of property:

{¶53} The marital residence located at 2916 Sexton Road, Geneva, Ohio, 44041, currently occupied by [Carolyn], has a stipulated value of One Hundred Forty Two Thousand Five Hundred Dollars ($142,500.00), shall be listed for sale with a mutually agreed-upon realtor at a mutually agreed-upon price, with the parties to equally divide the proceeds after deducting the costs of the sale. [Carolyn] shall pay the utilities and insurance upon the marital property until it is sold and [Thomas] shall be obligated to pay the real estate taxes.

{¶54} Personal property: The parties entered into a stipulation that the personal property should be divided according to who has possession of such property. [Carolyn] is awarded the personal property in her possession with a value of Twenty-Five Thousand Dollars ($25,000.00) * * *.

{¶55} [Thomas] is awarded the personal property in his possession with a value of Sixteen Thousand Dollars ($16,000.00). * * *

{¶56} The parties shall equally divide the Defendant's FirstEnergy Corporation Savings Plan which had a value, as of March, 2011, of One Hundred Eighty Nine Thousand Dollars ($189,000.00) with [Carolyn] to be awarded the sum of Ninety-Four Thousand Five Hundred Dollars ($94,500.00) and [Thomas] awarded the sum of Ninety-Four Thousand Five Hundred Dollars ($94,500.00). * * *

13

{¶57} [Carolyn] is awarded Fifty percent (50%) of [Thomas'] FirstEnergy Corporation Pension Plan earned during the marriage to be secured by a Qualified Domestic Relations Order * * *.

{¶58} In sum, the trial court ordered the equal division of the marital residence, Thomas' savings plan, and Thomas' pension plan. Each party retained the personal property in their possession. Carolyn retained her 401K, inasmuch as the court made no express division of this asset. According to the court's order, Carolyn was to receive $27,500 more than Thomas from a marital estate valued at $584,709, or about 52.35% of the marital estate.

{¶59} Thomas raises several arguments as to why the division of property is inequitable. Thomas notes that the trial court failed to divide Carolyn's 401K or otherwise assign it as her separate property. Thomas argues the court's order allows Carolyn to live "rent free" in the marital residence, without any incentive for her to cooperate in effecting its sale. Thomas also raises arguments regarding the parties' separate, pre-divorce accounts, which the court did not include in the marital estate.

{¶60} We find no abuse of discretion inherent in the trial court's approximately 52.3%-47.7% division of the marital estate, as that figure is close to an even division of property. However, there are several aspects of the court's division of property which require consideration.

{¶61} Initially, it cannot be presumed that the court's silence regarding Carolyn's 401K signifies the court's intention to award her the entirety of this marital asset. Such an award should be expressly made and, if necessary, the failure to divide the asset evenly should be explained.

14

**{¶62}** The trial court noted that the parties stipulated to the value of the personal property and that each party should retention of the property in their possession. The actual stipulation made at hearing was that "there were personal property appraisals conducted in February or March of 2010 by Dennis Huey and the property that Tom has right now is valued at $16,000 and the value of property that Carolyn has is at $25,000." The parties did not stipulate that each parties' retaining the property in their possession would effect an equal division of the property, as the court's Judgment Entry suggests. Accordingly, the court may, in the exercise of its discretion on remand, compensate Thomas with a distributive award for the difference in the value of the personal property.

**{¶63}** Regarding the parties' pre-divorce accounts, the trial court essentially awarded Carolyn this money in lieu of spousal support pendente lite. Thomas suffered no prejudice by retaining the pre-divorce funds in his separate account.

**{¶64}** Finally, with respect to the marital residence, we note that "in general it is preferable that parties be permitted the opportunity to sell property voluntarily in the market." *Glover v. Glover*, 2nd Dist. No. 2009-CA-23, 2009-Ohio-5742, ¶ 12. It must also be recognized that the circumstances of divorce "usually are not conducive to joint decision making by parties," and so "some effort should be made to disentangle the parties' economic affairs." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 183, 559 N.E.2d 1292 (1990). In the present case, the court should set a fixed amount of time for the parties to agree upon a price and realtor and list the property for sale. If the parties are unable to do so within the time given, the order should provide for an alternative means of effecting the sale independent of the parties' ability to cooperate. *See, e.g., Reed v. Reed*, 5th Dist. Nos. 2007 CA 00321 and 2007 CA 00329, 2008-Ohio-4349, ¶ 20-22.

**{¶65}** To the extent indicated above, the third assignment of error is with merit.

{¶66} In the fourth and final assignment of error, Thomas argues the trial court erred in ordering him to pay Carolyn's attorney fees in the amount of $7,500.

{¶67} "In an action for divorce * * *, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).

{¶68} "[A]n award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985), citing *Cohen v. Cohen*, 8 Ohio App.3d 109, 111, 456 N.E.2d 581 (11th Dist.1983).

{¶69} The trial court ordered Thomas to pay $7,500 towards Carolyn's attorney's fees. Carolyn's attorney testified as to his rate, the hours spent on the case, and that Carolyn's fees were in excess of $14,000. Carolyn's attorney further testified:

{¶70} Lastly, and most importantly, [Carolyn] has a health problem of attention deficit disorder and depression. Because of her problem, and I think we saw it today in her testimony here in the courtroom, I had a very difficult time all through this case getting information from her and also preparing her for the last hearing and this hearing, because of her attention deficit disorder. And that, in turn, made my bill higher than usual.

{¶71} Thomas contends the award is unreasonable in light of the simplicity of this case, i.e., there were no children and property values were stipulated, Carolyn's

16

repeated continuing of pretrials and hearings, and the significant spousal support award.

{¶72} There was no abuse of discretion in the order for Thomas to pay what ultimately amounts to less than half of Carolyn's attorney fees. Thomas enjoys a substantially greater income than Carolyn and better health. There was evidence that Carolyn's mental condition caused her attorney fees to be higher than usual. Also, both parties motioned the court for an additional two months to complete discovery and conduct depositions, and Thomas bears some of the responsibility for the delay in this case.

{¶73} The fourth assignment of error is without merit.

{¶74} For the foregoing reasons, the Judgment of the Ashtabula County Court of Common Pleas is reversed with respect to the division of property, affirmed in all other respects, and remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

17