[Cite as *Nelson v. Nelson*, 2022-Ohio-658.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| WILLIAM DAVID NELSON, SR., | CASE NO. 2021-L-037 |
| Plaintiff-Appellant, | |
| - v - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| LISA DIMBERIO NELSON, et al., | |
| Defendant-Appellee. | Trial Court No. 2015 DR 000030 |

# O P I N I O N

Decided: March 7, 2022
Judgment: Affirmed

*Ashley Cooper Kirk*, Thrasher, Dinsmore & Dolan, 100 Seventh Avenue, Suite 150, Chardon, Ohio 44024 and *Kevin Randall McMillan*, McMillan & Sobel, LLC, 30195 Chagrin Boulevard, Suite 300, Pepper Pike, Ohio 44124 (for Plaintiff-Appellant).

*Sandra A. Dray*, Sandra A. Dray Co., L.P.A., 1111 Mentor Avenue, Painesville, Ohio 44077 (for Defendant-Appellee).

JOHN J. EKLUND, J.

{¶1} William Nelson ("appellant") appeals from the Judgment Entry of Divorce of the Lake County Common Pleas Court, Domestic Relations Division. Appellant raises seven assignments of error relating to the trial court's calculation of the parties' income, the duration of spousal support, the tax consequences of spousal support, the division of property, and the denial of a new hearing. Finding no reversable error, we affirm.

{¶2} Appellant and Lisa Nelson ("appellee") were married in November 1997.Appellant filed for divorce in the Lake County Domestic Relations Court in January 2015. Appellant was self-employed as a dentist in Lake County and both appellant and

appellee owned multiple business ventures making this divorce complex and litigious. The trial and hearings the court held on post-trial motions for divorce took place over October 13, 2016; October 14, 2016; October 27, 2016; December 16, 2016; December 22, 2016; January 6, 2017; July 20, 2017; August 24, 2017; and November 6, 2017. The trial remained open pending the resolution of certain post-trial motions until the court held a final hearing on May 10, 2019, at which time the parties dismissed their post-trial pleadings, effective upon the court's judgment entry of June 18, 2019.

{¶3} Thereafter, the magistrate issued a 59-page decision on September 14, 2019. The decision listed each factor in R.C. 3105.18(C)(1) and discussed the court's consideration of these factors while also referencing and incorporating relevant factual discussion into the decision. Appellant filed objections to the decision and the court granted leave until January 6, 2020, to supplement the objections and file the transcript of proceedings. Appellant timely filed his supplemented objections. Appellee requested leave to file her response; thereafter, appellee filed a timely response on February 13, 2020. On October 6, 2020, the trial court issued an eight-page Judgment Entry adopting in part and modifying in part the Magistrate's September 14, 2019, decision. Appellant prematurely appealed and the case was dismissed by this court for lack of jurisdiction. On February 17, 2021, the trial court issued its Judgment Entry of Divorce and appellant timely filed the instant appeal.

**Assignments of error and analysis:**

{¶4} Appellant's seven assignments of error are reviewed under an abuse of discretion standard. "The term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v.*

2

*Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208 [2009 WL 1177050], ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, 2014 WL 2881994, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶5} The record in this matter is voluminous, including nine days of trial transcripts, while the magistrate's decision and trial court's review, amendments, and adoption of that decision are comprehensive. Under an abuse of discretion standard, this court reviews the facts in the record to determine whether the trial court exercised sound, reasonable, and legal decision-making. Appellant has not asserted any assignment of error that suggests that the trial court made an error of a pure issue of law, and we review his assignments accordingly. Therefore, this court will not disturb the discretion of the trial court if its findings are supported by the record.

**Spousal Support**

{¶6} A trial court has broad discretion to decide what award of spousal support is equitable based upon the facts and circumstances of each case. *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). When determining spousal support, the trial

3

court must provide sufficient detail for the basis of the award to allow adequate appellate review. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96-97, 518 N.E.2d 1197 (1988). To satisfy the *Kaechele* standard, a trial court must provide some factual support for the award rather than simply stating it considered the factors listed in R.C. 3105.18(C)(1). *Call v. Call*, 11th Dist. Portage No. 99-P-0004, 2000 WL 522458, * 3. In rendering its decision, the trial court is in the best position to observe the witnesses, which "cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). Moreover, we are "guided by the presumption that the trial court's findings were indeed correct." *Id.*

{¶7}   Appellant's first and second assignments of error are addressed together. The first and second assignments state:

{¶8}   "[1.] The Trial Court committed prejudicial error in determining Plaintiff-Appellant's income for support purposes where it arbitrarily added tax to Plaintiff's pre-tax income, and where it failed to use income averaging to calculate income for spousal support purposes."

{¶9}   "[2.] The Trial Court committed prejudicial error in its determination of Defendant-Appellee's income for spousal support purposes where it failed to include Defendant's multiple income sources and relied on her self-serving testimony to use an income year presenting significantly lower salary than all other available years."

{¶10}  Appellant claims that the trial court erred in the following ways: first, by overcalculating his 2015 gross income by $60,000; second, by arbitrarily using a single income year rather than income averaging; third, failing to include certain income sources

for appellee when calculating her income; and fourth, improperly weighing appellee's testimony as to her loss in earnings. We will take each of these arguments in turn.

{¶11} **The trial court did not err in calculating appellant's gross income:** Appellant argues that the trial court incorrectly included $60,000 that he paid in federal taxes in appellant's pre-tax income. Appellant's business paid his 2015 estimated income tax directly to the IRS. Line 65 of appellant's 2015 income tax return indicates that appellant listed $60,000 as estimated tax payments. Schedule C of the 2015 tax return shows the profit and loss of appellant's business as $191,868, which is the same number reported on line 12 of his individual return for business income. The question at issue here, then, is whether the $60,000 tax payment was already included on line 12 of appellant's tax return.

{¶12} We start by noting that the $60,000 figure was not specifically delineated in the net profits listed for his business in Schedule C, nor was it specifically delineated in the total income reported on line 22 of his 2015 individual tax return. At trial, when asked how he paid the income tax payment, appellant testified that the $60,000 came from his business accounts and that a check was written directly from the business to the IRS. He further clarified that he did not pay the money back to the business and that he considered the payment on his behalf a distribution. When asked if this would be considered income to him, his trial counsel objected. Further testimony at a later hearing date again addressed this issue with appellee's counsel asking appellant where his taxes show the $60,000 came out of his businesses net profits. His response was "I can't, but that's what happened." The matter was left for the magistrate to decide whether to impute this sum

5

in addition to the figure listed on appellant's tax return under his gross income and there was no further testimony on the matter.

{¶13}   The trial court adopted the magistrate's decision to impute the $60,000 as additional income to appellant. In so doing, the court observed that appellant testified that he did not do his own income taxes and instead gave his accountant the information needed to complete his taxes. The court wrote that appellant "could have called his accountant as a witness. He did not do so at his peril." The trial court cited *In re Sullivan*, 167 Ohio App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554 (11th Dist.), where this court stated that "[i]t is not the duty of the trial court to ferret out those expenses that qualify as ordinary and necessary. Rather, it is the duty of the obligor to assert that certain items are exempt from inclusion as gross income * * *." *Id.* at ¶ 25.

{¶14}   The Dissent suggests that appellant's 2015 income tax filings speak for themselves, noting that he signed the filings under penalty of perjury and that the document itself provides clear evidence of a party's income. *See Freeland v. Freeland*, 4th Dist. Jackson No. 02CA18, 2003-Ohio-5272, ¶ 16. Although the record is clear that appellant listed $60,000 on line 65 of his 2015 tax filing, what is not clear is whether that amount was included on the figure reported as part of the business' net profit in Schedule C to appellant's 2015 tax return, or as total income. Appellant's own merit brief notes that his tax return "does not break down the reported income to show *whether or not* such draws were included * * *." (Emphasis added). The documents do not speak for themselves in this case.

{¶15}   The parties do not disagree that the sum should be counted as income. Appellant argues that the mere listing of the $60,000 on line 65 of his 2015 individual tax

6

return as estimated taxes paid in 2015 proves that the $60,000 was already included in his reported total income of $193,254 and that the trial court double counted the $60,000. At oral argument, appellant asserted that Schedule C for his 2015 tax return would support his claim, in that the $60,000 is not listed there as an itemized expense. However, in reviewing the tax return in evidence, we find that there is no demonstrative proof that the $60,000 was separately listed and distributed for appellant's 2015 estimated tax payment.

{¶16}  Appellant argues that there is not a $60,000 itemized expense on Schedule C, and that it was included in the total income on his return. But there is a void in the evidence that appellant himself created. The $60,000 might be included in the total income figure reported on his taxes as he claims – or it might not be reported. There is no way to know from the evidence available. Appellant would have us, and the lower court, presume of the $60,000, like a jar of Prego sauce, that "It's in there." This we cannot do.

{¶17}  The Dissent also grants far more credibility to appellant's testimony than the trial court, which characterized appellant's testimony as unreliable by saying he "could recollect almost nothing about the preparation of his federal tax returns with relevant schedules." He, himself, emphasized his own ignorance of his taxes by saying "I don't do my tax returns for exactly this reason. I just give my accountant the information and she does the taxes." Despite this, he failed to call Elizabeth Tilton the Certified Public Accountant who prepared his tax returns. It is telling that in his brief, appellant states that his tax return "does not break down the reported income to show *whether or not* such draws were included * * *." (Emphasis added). This statement only reinforces the trial

court's observation that appellant could have called his accountant as a witness to clarify this portion of the record and failed to do so at his peril. Under an abuse of discretion standard, we cannot find that the trial court did not use sound, reasonable, decision making and the mere fact that Dissent would reach a different result is not enough to justify overturning the lower court's decision.

{¶18} On the record before the court, we do not conclude that the trial court abused its discretion by imputing that distribution to appellant's gross income. The trial court was in the best position to weigh the evidence and appellant's testimony to determine the facts based upon the record. As the trial court observed, appellant had an opportunity to "assert that" the $60,000 was "exempt from inclusion as gross income" and chose not to present evidence demonstrative of that fact. *See Id.* at ¶ 25.

{¶19} **The trial court used its authority to decide whether to use income averaging:** Next, appellant argues that the trial court abused its discretion by relying on a single year of income rather than income averaging to determine the parties' income. Appellant states that the magistrate discussed the possibility of using income averaging to determine income but ultimately relied upon a single year of income. This court has held that the "decision regarding when the use of an averaging method is appropriate is left to the sound discretion of the trial court because it is in the best position to weigh the facts and circumstances." *In re Sullivan,* at ¶ 29, citing *Cook v. Cook*, 11th Dist. Lake No. 95-L-115, 1996 WL 200573 and *Worch v. Worch*, 2d Dist. Darke No. 1502, 2000 WL 376643.

{¶20} In this case, the trial court referenced and relied upon the parties' prior income years as part of its analysis for determining spousal support. The court stated that

8

appellant had income that "was increasing and demonstrates significantly more earnings in 2012 and 2013 than in 2014 and 2015. However, for the purposes of determining income, the plaintiff's 2015 income tax return should be the base, starting point * * *." In reference to appellee's income, the trial court modified the magistrate's decision to modify appellee's income upward slightly. However, the court also relied upon testimony from appellee that her business had been affected by the passage of the Affordable Care Act and that certain provisions went into effect in 2014 which lowered her profits substantially. The court found this testimony to be credible and relied upon it to determine appellee's income.

{¶21} These remarks indicate that the trial court had the necessary information to use income averaging and made a specific decision to not use it. The trial court was in the best position to weigh the facts and circumstances and we will not disturb that decision here when the record demonstrates that the court weighed the appropriateness of income averaging and specifically chose not to use it.

{¶22} **The trial court appropriately considered all of appellee's income sources:** Although appellant lists several potential sources of income that the trial court could have considered in calculating appellee's income, we do not find that the trial court erred in excluding these sources such as appellee's inheritance, retained business earnings, and cash draws from her businesses. The court addressed these specific items, weighed the evidence, and determined in each instance that they should not be counted as income to the appellee.

{¶23} In reference to the inheritance, the court declined to impute this as income to appellee because she had used significant inheritance monies to improve the marital

9

Case No. 2021-L-037

estate, which appellant received in the distribution of assets. Further, appellee had used portions of her inheritance to maintain the status quo both during and after the marriage. On this basis, the court declined to include the inheritance as income.

{¶24} In reference to cash draws from appellee's businesses, the court did not include certain draws as income because appellee's unrebutted trial testimony reflected that she used these draws to pay independent contractors commissions that they were owed for business related services. The magistrate found that appellee's "testimony as to commissions paid to independent contractors was highly credible." In the absence of countervailing facts to suggest that the trial court erred, we are "guided by the presumption that the trial court's findings were indeed correct." *Miller, supra*, at 74.

{¶25} In reference to the retained business earnings, the court, again, noted that appellee had to use these earnings to keep the financial boat afloat during the pendency of the divorce. The trial court's final judgment entry did make minor modifications on the basis that the court found that appellee used $4,352 of business funds for her personal expenses rather than business expenses. However, in reference to other payments, the court said there was "no evidence to link those payments from the LLC to the personal expenses of the Defendant." Where, as here, the trial court provides specific facts and reasoning for its decisions in calculating spousal support, the reviewing court will not find error.

{¶26} **The trial court was in the best position to weigh trial testimony:** Appellant argues that the trial court improperly weighed the trial testimony by relying upon appellee's "self-serving" testimony that provisions of the Affordable Care Act had significantly reduced her income. However, the trial court is in the best position to weigh

10

testimony and we presume that the trial court's findings are correct. Appellee testified that her income had been negatively impacted by the Affordable Care Act. She said that various provisions of the law went into effect in 2014 which reduced the commissions that appellee earned from the sale of health insurance policies. For instance, she said that commissions she previously earned ranged from 10-14% per policy prior to the changes and that after the changes, the commissions dropped to 4-5% per policy. Appellee testified that in the second year after the sale of a health insurance policy, a commission for a family of five dropped from $150 to $35. This testimony was unrebutted, and the trial court did not err in finding it credible and relying upon it.

{¶27} Accordingly, Appellant's first and second assignments of error are without merit.

{¶28} Appellant's third assignment of error states:

{¶29} "[3.] The Trial Court committed prejudicial error in determining the duration of the term of spousal support when it sustained Plaintiff's objection to the length of the term, but added an additional thirty months without explanation."

{¶30} **The trial court properly modified the duration of spousal support:** Although appellant argues that the trial court added an additional thirty months to his term of spousal support without explanation, the record does not reflect this. The magistrate's decision ordered a 72-month support term retroactive to January 1, 2016, to December 31, 2021. The trial court modified this order saying that appellant's "objection as to duration is well taken" and in sustaining that objection ordered appellant to pay spousal support for a term of 54 months retroactive to January 1, 2020, to June 30, 2024.

{¶31} The trial court's Judgment Entry specifically discussed the magistrate's decision to order a 72-month spousal support term retroactive to January 1, 2016, with the amount $5,000 per month retroactive to January 1, 2016. The court also noted that the temporary spousal support order effective March 4, 2015, was only $2,585 per month. The court said that a "temporary spousal and/or child support order is to keep the financial status quo of the parties pending trial. The transcript shows the Defendant used some of her inheritance to pay bills during the pending divorce." Therefore, the court's modification of support changed the initial 72 months at $5,000 per month retroactive to January 1, 2016, to a modified duration of 54 months at $5,000 per month retroactive to January 1, 2020. The total months that appellant is paying the full support order are indeed less than the magistrate's initial order. The court finds no error in the trial court's modification of the support order.

{¶32} Accordingly, appellant's third assignment of error is without merit.

{¶33} Appellant's fourth assignment of error states:

{¶34} "[4.] The Trial Court erred in failing to address the tax consequences of the award of spousal support in violation of O.R.C. 3105.18."

{¶35} **Appellant failed to raise the effects of the Tax Cuts and Jobs Act during post-trial briefing when he had opportunity to do so:** Appellant claims that the trial court erred by failing to address the tax consequences of the award for spousal support as required by R.C. 3105.18(C)(1)(I). R.C. 3105.18(C)(1)(I) requires the court to consider the tax consequences under "the general rule * * * that, ordinarily, 'if the award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered.'" *Rice v.*

*Rice*, 11th Dist. Nos 2006-G2716 and 2006-G2717, 2007-Ohio-2056, ¶ 31, quoting, *Day v. Day*, 40 Ohio App. 3d 155, 159, 532 N.E.2d 201 (10th Dist. 1988). "[W]here an appellant has failed to produce evidence of tax consequences in the trial court * * * tax consequences are speculative and need not be considered." *Id.*, quoting *Bauman v. Bauman*, 6th Dist. Erie No. E-01-025, 2002-Ohio-2172, ¶ 16. Otherwise, the trial court would be engaging "in determining the tax consequences of the transaction based upon mere conjecture or speculation." *Id.* citing *White v. White*, 9th Dist. Summit No. 18275, 1998 WL 103338, * 3.

{¶36} In *Rice*, we relied upon *Ferrero v. Ferrero,* 5th Dist. Stark No. 98-CA-00095, 1999 WL 744431, where the court found that the appellant had raised a tax issue to the court but failed to produce any evidence as to what the tax consequences would be. *Rice.* at ¶ 32, citing *Ferrero*, at *15-16. When a party does not present evidence on the tax issue beyond argumentation, the trial court need not consider the tax consequences because to do so would be speculative. *Id.* The failure to offer evidence on the tax consequences waives the right to assert the argument on appeal. *Id.*

{¶37} In this case, appellant cites the passage of the Tax Cuts and Jobs Act which eliminated the alimony deduction for spousal support for divorces executed after January 1, 2019. Appellant claims that the length of time between the trial in January 2017 and the magistrate's decision in September 2019 resulted in the passage of a law, the effects of which he was unable to argue to the court and which the court did not consider. To remedy this, appellant seeks remand for the trial court to consider this issue.

{¶38} However, the facts of this case reveal that the reason there was a significant delay between the conclusion of the trial and the magistrate's decision was the parties'

Case No. 2021-L-037

resolution of all post-trial briefs. The post-trial briefs were not resolved until June 18, 2019, and the magistrate's lengthy decision was issued shortly thereafter on September 14, 2019. Although the trial ended prior to the passage of the Tax Cuts and Jobs Act, appellant had ample opportunity between its passage and the resolution of all post-trial briefs to raise this issue and present facts outlining how, if at all, the passage of this act would have tax consequences on him or appellee. Appellant did not raise this issue until he objected to the magistrate's decision. At that point, it would have been speculative for the court to rule upon this issue because appellant had not presented any facts or evidence on the issue.

{¶39} Contrary to appellant's claims, he could have raised the issue prior to the magistrate's decision. This is particularly true in this case where post-trial motions were pending for an extended period. Appellant did not present evidence on this issue at the trial level and the court did not abuse its discretion in not addressing a topic which appellant did not raise until after the magistrate's decision. Moreover, his failure to offer evidence or raise the issue prior to the magistrate's decision waives his right to assert this argument on appeal.

{¶40} Accordingly, appellant's fourth assignment of error is without merit.

**Division of Marital Property:**

{¶41} A domestic relations court's division of property in a divorce proceeding is reviewed under an abuse of discretion standard. *Cherry v. Cherry,* 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *Hutchison v. Hutchison,* 11th Dist. Lake No.2014–L–048, 2014–Ohio–5471, ¶ 14. In reviewing the court's division of property, an appellate court "is not required to conduct an item-by-item review of a property division. *Fazenbaker v.*

14

*Fazenbaker*, 11th Dist. Trumbull No. 2009-T-0131, 2010-Ohio-5400, ¶26, citing *Winkler v. Thomas*, 5th Dist. Tuscarawas No. 2000AP03-0031, 2001 WL 81701, * 4. "[W]hen considering whether a trial court has abused its discretion in dividing marital property, a reviewing court should not review discrete aspects of the property division out of context of the entire award." *Baker v. Baker*, 83 Ohio App.3d 700, 615 N.E.2d 699 (1992), citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984). Instead, a reviewing court 'should consider whether the trial court's disposition of marital property *as a whole* resulted in a property division which was an abuse of discretion.' *Baker* [702]." (Emphasis added.) *Rice, supra,* at ¶ 33.

{¶42} A "'trial court's characterization of property, as separate or marital, is a question of fact, thus, a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization." *Humphrey v. Humphrey,* 11th Dist. No. 2000–A0092, 2002 Ohio 3121, at ¶ 16. "'Under this standard, the judgment of the trial court will not be reversed as being against the weight of the evidence if the court's decision is supported by competent, credible evidence.'" *Id.* quoting *Frederick v. Frederick,* 11th Dist. Portage No. 98-P-0071, 2000 WL 522170, *13-14.

{¶43} Appellant's fifth and sixth assignments of error both relate to the court's division of marital property, and we analyze them together. Appellant's fifth and sixth assignments of error state:

{¶44} "[5.] The Trial Court committed prejudicial error when it allocated the division of the Fredle Drive LLC business checking account."

{¶45} "[6.] The Trial Court committed prejudicial error when it failed to divide the marital portion of the Defendant's personal injury award."

{¶46} Appellant claims that the trial court incorrectly allocated the division of the parties' "Fredle Drive LLC" business account and that the court abused its discretion by not dividing appellee's personal injury award.

{¶47} In reference to the allocation of the Fredle Drive LLC business account, appellant claims that the lower court improperly divided this asset by ordering it to be divided twice. The parties were both owners of Fredle Drive LLC and the bank accounts associated with the business. Prior to the divorce filing, appellee managed the accounts, but appellant assumed control after the divorce filing and for approximately two years thereafter. At trial, appellee testified that at the end of every year, the monies from the accounts were distributed to appellant and appellee equally. After appellant took control of the account, appellee did not receive the end of year distribution for 2015 or 2016. Appellee provided evidence that the balance of the account for the 2015 distribution period was $15,492.19 and that the balance for the 2016 distribution period was $19,990.00.

{¶48} The magistrate's decision weighed the testimony on this issue and found that the appellant "was disingenuous as to his position related to this asset as he stated he did not remember receiving K1s [distributions] and failed to make even the most cursory glance at his prior tax returns that clearly explained these usual distributions." The magistrate's decision granted appellee a total of $19,263.80, an amount the magistrate said was "borne out by the Citizens' Bank account exhibits and are in line with the 2012 and 2013 pay-outs." In its Judgment Entry, the trial court agreed with this assessment saying that appellant "could not provide substantive evidence as to his handling of the Fredle Drive account. Based on the evidence adduced at trial, this Judge

16

concurs with the Magistrate's division as to the Citizen Bank account year end balances for 2015 and 2016."

{¶49} In reference to the personal injury award, appellee suffered a personal injury in Charleston, South Carolina and filed suit to recover for her injuries. Appellant did not join this action and did not file a loss of consortium claim. Although the injury and the filing of the lawsuit occurred prior to the divorce proceedings, the case was not settled until after appellant initiated the divorce proceedings. At trial, appellee testified that she "just paid the medical bills as they came in like if they were any other bill." However, she also testified that she was not expecting a windfall saying that the $28,500 settlement she expected to receive would only be enough to cover attorneys' fees, costs, and the remaining unpaid medical bills.

{¶50} R.C. 3105.171(A)(6)(a)(vi) provides that marital property does not include "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]" R.C. 3105.171(A)(6)(a)(vi) "'The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.'" *Campbell v. Campbell*, 11th Dist. Lake No. 2014-L-015, 2014-Ohio-5614, ¶ 21, quoting *Smith v. Smith*, 11th Dist. Trumbull No. 98-A-0034, 1999 WL 1488950, *13. The trial court is required to make findings determining whether the party requesting the court to classify an asset as separate property has met the burden. *Id.*, citing *Letson v. Letson*, 11th Dist. Trumbull No. 95-T-5356, 1997 WL 663514, *11. Where a personal injury settlement is made payable in one check to both husband and wife, the parties comingle their separate property. *Id.* at ¶ 28, citing *Modon v. Modon*, 115 Ohio

App.3d 810, 816, 686 N.E.2d 255 (1996). In cases where the monies are comingled, the party seeking to characterize the property as separate has the "burden of convincing the trial court how much of the check was compensation" for personal injuries and associated expenses. *Id.*, quoting *Modon.*

{¶51} Here, the lower court characterized the personal injury settlement as separate property. The parties' funds were not comingled. Appellant's name was not on the settlement check, and he did not join the action or file his own claim for loss of consortium. Therefore, the personal injury settlement itself was properly characterized as separate marital property pursuant to R.C. 3105.171(A)(6)(a)(vi) – provided that the marital estate did not suffer losses for "expenses paid from marital assets[.]"

{¶52} In this case, the trial court rejected appellant's claim that appellee had paid medical expenses out of marital funds. The court said that the parties had largely separated their finances from 2014 to the present and maintained separate accounts through their marriage while appellee paid the greater portion of the medical bills between 2014 and 2016. The court further found appellee's statements credible that the award was only enough to cover appellee's outstanding medical expenses. The court said it would be inequitable to divide appellee's settlement when she needed the full amount to pay her remaining, separate medical expenses. On this evidence, the court found that appellee satisfied her burden of proof to establish the settlement as separate property. Thus, the trial court relied upon competent credible evidence to determine that the personal injury settlement was separate property under R.C. 3105.171(A)(6)(a)(vi).

{¶53} We review appellant's assignments as to the division of marital property mindful the reviewing court is not required to engage in item-by-item reviews of the lower

18

court's division of property. Instead, we are guided by the overall equity of the award. In the above instances, we cannot say on this record that the court abused its discretion in the disposition of marital property.

{¶54} Accordingly, appellant's fifth and sixth assignments of error are without merit.

**Civ. R. 53(D)(4)(d) additional evidence:**

{¶55} Appellant's seventh assignment of error states:

{¶56} "[7.] The Trial Court committed prejudicial error and abused its discretion in failing to grant a new hearing."

{¶57} Appellant relies upon Civ. R. 54(D)(4)(d) which deals with the court's action on objections to magistrate's decisions. Appellant asserts that the trial court abused its discretion by not hearing additional evidence that appellant says became available between the trial and the magistrate's decision.

{¶58} Civ. R. 54(D)(4)(d) provides,

(D) Proceedings in Matters Referred to Magistrates.
* * *
(4) *Action of Court on Magistrate's Decision and on Any Objections to Magistrate's Decision; Entry of Judgment or Interim Order by Court.*
* * *
(d) Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

19

Case No. 2021-L-037

{¶59} After the magistrate's decision, appellant objected and requested a new evidentiary hearing pursuant to Civ. R. 53(D)(4)(b) so that the court could hear new evidence – namely new income tax returns to determine the parties' income. Appellant cites several cases outside of the Eleventh District which hold that "a court does not have discretion to refuse to consider new evidence if the objecting party demonstrates that it could not, with reasonable diligence, have presented the evidence to the magistrate." *Welch v. Welch,* 4th Dist. Athens No. 12CA12, 2012–Ohio–6297, ¶ 12; *Morrison v. Morrison*, 9th Dist. Summit No. 27150, 2014-Ohio-2254, ¶27 (quoting *Welch*); *Maddox v. Maddox*, 2016-Ohio-2908, 65 N.E.3d 88. ¶ 14 (1st Dist.). (A trial court is required to accept "additional evidence if the objecting party demonstrates that with reasonable diligence, it could not have produced the evidence for the magistrate's consideration. *See Riley v. Riley,* 6th Dist. Huron No. H–08–019, 2009-Ohio-2764, 2009 WL 1652837, ¶ 20, quoting *Johnson–Wooldridge v. Wooldridge,* 10th Dist. Franklin No. 00AP–1073, 2001 WL 838986 (July 26, 2001).").

{¶60} The Eleventh District has held that "'[w]hile the trial court has the discretion to refuse to consider additional evidence, the trial court must first give the offering party an opportunity to demonstrate that such evidence could not have been produced before the magistrate.'" *Porter v. Ferrall*, 11th Dist. Portage No. 2002-P-0109, 2003-Ohio-6685, ¶ 16, quoting *McClain v. McClain* 11th Dist. No. 98-P-0002, 1999 Ohio App. LEXIS 4655, 12-13 (Sept. 30, 1999).

{¶61} In *Morrison*, the court noted that a request for an additional evidentiary hearing could be subject to abuse. The court said that Civ. R. 53(D)(4)(d) "'contemplates that new events may arise or be discovered between the time of a magistrate's decision

and a trial judge's final judgment.'" *Morrison, supra*, at ¶ 27, quoting *In re A.S.,* 9th Dist. Summit No. 26462, 2013–Ohio–1975, ¶ 14–15 (analyzing identical language in Juv.R. 40(D)(4)(d)). The court in *Morrison* said that a blanket rule requiring a hearing based on the invocation of talismanic words "could lead to an abuse of that rule." *Id.* at ¶ 28. In that case, the court found the moving party had satisfied the requirements of Civ. R. 53(D)(4)(d) because,

> Wife noted the evidence did not become available until after trial. She identified a factual change in circumstances regarding her employment. Finally, she detailed that the parties' legal parental rights and responsibilities could be affected by the change. We take no position on the merits of Wife's allegations, but simply find a hearing was warranted under the circumstances.

*Id.*

{¶62} The "crux" of the reasonable diligence standard of Civ. R. 53(D)(4)(d) "is whether the party was put on notice that they would be reasonably expected to introduce the evidence at the hearing before the magistrate. If the party had notice that they would be reasonably expected to introduce evidence on the subject, then the trial court has discretion to accept or reject that evidence." (Citations omitted). *Maddox, supra*, at ¶ 15. The court should consider whether or not the record demonstrates that an appellant "with reasonable diligence, could not have produced that evidence for the magistrate's consideration." *Porter, supra,* at ¶ 19. (Holding that appellant "had ample opportunity to gather that evidence and present it to the magistrate at the previous evidentiary hearings. Thus, the trial court lawfully exercised its discretion in refusing to allow that additional evidence, which was by no means 'newly discovered.'")

{¶63} In this case, appellant identified that his evidence of newly filed tax returns had become available between the time of trial and the magistrate's decision. However,

as noted above, the cause for the substantial time between trial and the magistrate's decision was that multiple post-trial motions remained pending until the parties resolved those issues. Had appellant used reasonable diligence in that period, he would have filed an additional post-trial brief *prior to the magistrate's decision* seeking to supplement the record with newly filed tax returns which were available well before the magistrate's decision. *See Id.* at ¶ 16.

{¶64} Appellant has also indicated that a change in income could affect the parties' rights and responsibilities. However, appellant has failed to identify any factual change in circumstance regarding the parties' income. Instead, appellant speculates about a change in circumstances and does nothing more than invoke the talismanic words of Civ. R. 53(D)(4)(d). *See Morrison, supra*, at ¶ 28.

{¶65} Finally, in this case, the court retained jurisdiction to modify the spousal support order. If there has been a substantial change in circumstances that was not contemplated by the parties in the original decree, appellant may present such to the trial court. *See Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶ 37-38. However, appellant did not present any argument or evidence that would suggest there has been a substantial change in circumstances. Rather, he has merely made suggestions that new income information from subsequent years could be different. We decline to conclude that the trial court abused its discretion under these circumstances.

{¶66} Accordingly, appellant's seventh assignment of error is without merit.

Case No. 2021-L-037

{¶67} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

THOMAS R. WRIGHT, P. J., concurs,

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶68} While I concur with the disposition of the second through seventh assignments of error, I dissent from the majority's decision to affirm the addition of $60,000 to appellant's 2015 income above the amount stated in his tax return. This determination results in unfairly counting the $60,000 in question twice, rejects appellant's credible testimony, and places an unreasonable burden on appellant to provide additional evidence of his income where his tax return already established such fact. Given the lack of any rebuttal evidence establishing this amount was not accounted for in appellant's tax return, the trial court's determination of appellant's income must be reversed.

{¶69} The majority finds that the trial court did not abuse its discretion when adding $60,000 to appellant's 2015 claimed income, finding he failed to "present evidence demonstrative of" the fact that the $60,000 was exempt from inclusion as additional income. It concludes, like the trial court, that he should have called his accountant as a witness to demonstrate whether the $60,000 was included in the reported taxable income. There are several flaws in this conclusion. Significantly, it places a burden on appellant

23

that is not required by law and is unwarranted under the facts of this case. Here, appellant introduced a copy of his tax return stating his income for 2015, which he signed electronically, under penalty of perjury, affirming that the income information was accurate. *See* 26 U.S.C. 6065 ("Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury."). Such a document provides credible and clear evidence of a party's income. It has been held that, "in determining what constitutes 'income,' * * * a trial court should typically use the figures shown on a party's annual income tax return" and that such figures "are preferred to a party's oral representations in determining what constitutes the party's 'income' for the purposes of R.C. 3105.18(C)(1)(a)." *Freeland v. Freeland*, 4th Dist. Jackson No. 02CA18, 2003-Ohio-5272, ¶ 16; *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 21. To add $60,000 to appellant's reported income is essentially to determine that he fraudulently stated his income on his tax return, which conclusion the evidence simply does not support.

{¶70} In addition to the tax return, appellant provided testimony in relation to the disputed $60,000, which he had used to make a tax payment. Appellant testified that the money "came out of that $190,000," i.e., the amount of his income stated in the 2015 tax return. In other words, although he used $60,000 from his business account to pay quarterly taxes, this amount was included as part of the approximately $190,000 income claimed. This testimony, coupled with the tax return, supports a conclusion contrary to that reached by the trial court and demonstrates no additional income should have been

24

added to the amount stated in the tax return.  It is irrelevant how appellant spent the $60,000; it is only pertinent whether the evidence supports that appellant reported it as taxable income.

{¶71}  The decision to increase appellant's income by $60,000 appears to be based solely on a few comments in his testimony which the trial court interpreted to mean he had not claimed the $60,000 as income on his tax return.  Appellant, when asked how his taxes were paid, stated that the money "came from [his] business."  When asked if it was a "distribution," he indicated that he did not understand the question.  He explained that it was income but when asked if it should have been declared as part of his income for tax purposes he explained, "That's not how this works."  He later clarified that, since the money was part of his income, he reported it on the return for tax purposes, and, regarding the previous confusion over whether it was a distribution, he was "looking at it from a semantic standpoint."  Far from establishing a failure to correctly report his income, appellant's testimony, viewed as a whole, only serves to demonstrate his confusion about financial terms and intricacies of tax reporting.  While the testimony used by the trial court to justify its decision was equivocal and uncertain, when asked questions to clarify, he definitively and clearly stated that the $60,000 was part of the $190,000 in income he made in 2015.  This is also consistent with his statement that he keeps funds in the business account that are part of his claimed income.  Such testimony is credible, even if he was not fully cognizant of the terminology utilized when discussing these matters. Appellee argues that, as a businessman, appellant should understand tax-related matters, however, a decision to increase appellant's income by over 25 percent and thereby greatly increasing the amount of the support award, cannot be based on

25

conjecture. Appellant is a dentist and there is nothing to indicate he is well-versed on matters relating to finances or taxes; he emphasized in his testimony that he is not and repeatedly noted his use of an accountant to handle various business matters.

{¶72} The emphasis on the appellant's failure to call his accountant as a witness is also misplaced. As noted above, given the significance of the tax return itself in establishing his income and his own testimony that the $60,000 was part of his reported income, such evidence was sufficient to demonstrate his 2015 income. There is no authority requiring an accountant's testimony to establish this fact nor should a party be required to have an accountant explain the tax implications of every withdrawal from a business account. Such testimony would be cumulative as to the issue in dispute, i.e., whether the amount claimed on the tax return included the $60,000 paid for appellant's quarterly taxes. The accountant would only be able to provide testimony as to what appellant reported to her as his income when aiding in the preparation of his return. If the accountant had been aware of an additional amount of income, she would have been obligated to report it on his return. Thus, the accountant's testimony would add nothing of value to the record that was not already present through appellant's testimony and the return. Further, the accountant signed the tax return electronically and would be subject to penalties if she willfully aided in the preparation of a fraudulent or false tax return. *See* 26 U.S.C. 7206. It appears that calling the accountant would be fruitless in resolving the sole issue in dispute, i.e., whether appellant failed to report income on his tax return, since if she had knowledge of his failure to report, she would be admitting she aided in preparing a false tax return.

Case No. 2021-L-037

{¶73} To the extent that the majority notes it is "not the duty of the trial court to ferret out * * * expenses," *supra* at ¶ 13, appellant did not ask the court to do so. The court had the evidence it needed to reach its decision before it, by way of the tax return. No additional evidence or witnesses were required nor was the court asked to look into any other evidence to make a finding. The evidence and testimony indicated that funds in the business account were part of appellant's income that he may withdraw for personal expenses.

{¶74} Further, the accountant's testimony was of little necessity where there was no evidence presented by the opposing side to rebut appellant's testimony and tax return. The failure of a party to present evidence to rebut testimony is correctly attributed to that party and unrebutted testimony is of significant value. *Haynes v. Washington*, 373 U.S. 503, 510, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). *See also State v. Edgell*, 30 Ohio St.2d 103, 117, 283 N.E.2d 145 (1972) (O'Neill, J., dissenting) ("[w]hile credibility is a matter to be resolved by the trial judge, there is significance in the uncontradicted testimony of the defendant"). The burden for additional evidence properly lies with appellee, not appellant.

{¶75} Finally, the majority argues that we have no way of knowing whether appellant reported the $60,000 in the tax return and concludes that the court cannot "presume of the $60,000, like a jar of Prego sauce, that 'It's in there.'" As outlined above, however, there is a way to know whether the $60,000 was reported and that is through appellant's testimony and tax return. The Prego sauce label, like appellant's tax returns, lists its contents, and this court has no evidence to suggest either is inaccurate. In matters relating to spousal support, while the trial court is given broad discretion to determine what is equitable, "'such discretion is not unlimited.'" *Dilley v. Dilley*, 11th Dist. Geauga

27

No. 2019-G-0207, 2020-Ohio-984, ¶ 12, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990).  The judgment here, which goes against the evidence presented by appellant and is unsupported by any evidence from the opposing party, constitutes an abuse of discretion.

{¶76}  For the foregoing reasons, I dissent in part and would reverse the lower court's judgment as to the decision to add $60,000 to the income stated in appellant's 2015 tax return.

Case No. 2021-L-037